UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL COCANOUR and DALE RIMKUS, on behalf of all those similarly situated, | CIVIL ACTION NO.: 3:25-cv-01571-OAW |
| Plaintiffs, | |
| v. | DECEMBER 16, 2025 |
| NATIONAL SHOOTING SPORTS FOUNDATION, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF NATIONAL SHOOTING SPORTS FOUNDATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

Introduction ................................................................................................................. 1

Background .................................................................................................................. 4

Legal Standard ............................................................................................................ 6

Argument .................................................................................................................... 6

I.      Plaintiffs Do Not Have Standing Because They Have Alleged No Cognizable
        Harm, Much Less Harm Traceable to Actions Taken by NSSF ....................... 6

        A.      Plaintiffs Cannot Establish a Concrete, Particularized Injury Sufficient to
                Meet Article III Requirements ................................................................. 7

        B.      Plaintiffs Have Not Established That Any Action by NSSF is Traceable to
                Any Harm Plaintiffs Suffered ................................................................. 9

II.     Plaintiffs Fail to State a Claim for Unjust Enrichment .................................... 11

        A.      Plaintiffs Fail to Allege That NSSF Received Any Legally Cognizable
                Benefit, Because They Allege Only That a Nonprofit Entity Used
                Information for Nonprofit Purposes ....................................................... 11

        B.      Even if NSSF Received a Cognizable Benefit, It Did Not Receive That
                Benefit From Plaintiffs, and so NSSF Did Not "Unjustly" Fail to
                Compensate Them .................................................................................. 14

        C.      Plaintiffs Fail to Allege That They Have Suffered Any Cognizable
                Financial Detriment ............................................................................... 15

III.    Plaintiffs' Claims are Untimely Because the Most Recent Activity Alleged in the
        Amended Complaint Happened Nearly Ten Years Ago .................................... 18

Conclusion ................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Ardaji v. Columbia Pictures Industries, Inc.*,
   No. CV196040356S, 2020 WL 8024813 (Conn. Super. Ct. Nov. 20, 2020) ........................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................6, 7, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................6

*Bell v. Survey Sampling Int'l LLC*,
   No. 3:15-cv-1666, 2017 WL 1013294 (D. Conn. March 1, 2017) ...................13, 14

*Brady v. Basic Rsch., LLC*,
   101 F. Supp. 3d 217 (E.D.N.Y. 2015) ...................................................10

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
   566 F. Supp. 2d 81 (D. Conn. 2008), *aff'd*, 567 F.3d 79 (2d Cir. 2009)...............15

*Brooks v. Peoples Bank*,
   732 F.Supp.3d 765 (S.D. Ohio 2024) ...................................................13

*Brown v. State Farm Mutual Automobile Insurance Co.*,
   No. 23-C-6065, 2025 WL 81340, slip op. (N.D. Ill. Jan. 13, 2025)...................2, 17

*Bueno v. Gen. Elec. Co.*,
   No. 1:24-CV-0822, 2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025)........................7

*Carlone v. Lamont*,
   No. 21-871, 2021 WL 5049455 (2d Cir. Nov. 1, 2021) ............................9

*Chevron Corp. v. Donziger*,
   833 F.3d 74 (2d Cir. 2016)....................................................................9

*Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*,
   98 F.4th 386 (2d Cir. 2024) ...............................................................7

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*,
   790 F.3d 411 (2d Cir. 2015)...................................................................6

*Edwards v. United States*,
249 F.R.D. 25 (D. Conn. 2008)............................................................................11

*ExamWorks, Inc. v. Soltys*,
No. 17-CV-0080-LJV-MJR, 2017 WL 4712206, at *5 (W.D.N.Y. Aug. 10,
2017), *report and rec. adopted*, No. 17-CV-80, 2017 WL 4680410 (W.D.N.Y.
Oct. 18, 2017) ......................................................................................................12

*Fero v. Excellus Health Plan, Inc*.,
236 F.Supp.3d 735 (W.D.N.Y. 2017) ....................................................................9

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)..............................................................................................7

*Gallagher v. U.S. Bank Nat'l Ass'n*,
No. 3:14-CV-1877, 2017 WL 2111593 (D. Conn. May 15, 2017) ........................19

*Geriatrics, Inc. v. McGee*,
332 Conn. 1 (2019) ..............................................................................................14

*Giordano v. Giordano*,
39 Conn. App. 183 (1995) ...................................................................................19

*Guthrie v. Rainbow Fencing Inc.*,
113 F.4th 300 (2d Cir. 2024) .................................................................................8

*Hartford Underwriters Ins. Co. v. Plymouth Home Improvements, LLC*,
No. CV116020310S, 2012 WL 1959016 (Conn. Super. Ct. May 1, 2012)............19

*Harty v. W. Point Realty, Inc.*,
28 F.4th 435 (2d Cir. 2022) .............................................................................8, 9

*HBR Trumbull, LLC v. Mager*,
No. FBTCV236124694S, 2024 WL 5252338 (Conn. Super. Ct. Dec. 24,
2024) ....................................................................................................................12

*In re American Medical Collection Agency, Inc. Customer Data Security Breach
Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...............................13

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F.Supp.3d 573 (N.D. Ill. 2022) .....................................................................12

*In re DoubleClick Inc. Priv Litig.*,
154 F.Supp. 2d 497 (S.D.N.Y. 2001)...............................................................2, 17

*In re Jetblue Airways Corp. Privacy Litigation*,
  379 F.Supp.2d 299 (E.D.N.Y. 2005) ...............................................................2, 17

*In re Practicefirst Data Breach Litig.*,
  No. 1:21-CV-00790, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022), *report and
  rec. adopted*, No. 21CV790JLSMJR, 2022 WL 3045319, at *7 (W.D.N.Y.
  Aug. 1, 2022) ...........................................................................................................10

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017)......................................................................................9

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .........................9

*Litchfield Property Management, Inc. v. Robert Holliday Reid*,
  No. CV166013974S, 2021 WL 4125920, at *5 (Conn. Super. Ct. Aug. 18,
  2021) .......................................................................................................................20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).................................................................................................7

*Madison Square Garden, L.P. v. Nat'l Hockey League*,
  No. 07 CV 8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008).............................18

*Messier v. Southbury Training Sch.*,
  No. 3:94-CV-1706, 1999 WL 20910 (D. Conn. Jan. 5, 1999)..............................2, 8

*Michel v. Yale Univ.*,
  No. 3:20-CV-01080, 2023 WL 1350220 (D. Conn. Jan. 30, 2023), *aff'd*, 110
  F.4th 551 (2d Cir. 2024) ....................................................................................15, 18

*Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of
  Health & Hum. Servs.*,
  145 F.4th 212 (2d Cir. 2025) ....................................................................................6

*Pruchnick v. Envision Healthcare Corp.*,
  439 F.Supp.3d 1226 (D. Nev. 2020).......................................................................16

*Reclaimant Corp. v. Deutsch*,
  332 Conn. 590 (2019) ........................................................................................18, 19

*Simon v. E. Kentucky Welfare Rts. Org.*,
  426 U.S. 26 (1976)................................................................................................2, 8

*Slainte Invs. Ltd. P'ship v. Jeffrey*,
142 F.Supp.3d 239 (D. Conn. 2015) ........................................................................19

*Solow Bldg. Co., LLC v. Nine W. Grp., Inc.*,
No. 00 CIV. 7685, 2001 WL 736794 (S.D.N.Y. June 29, 2001), *aff'd sub nom.*
*Solow Bldg. Co., LLC. v. Nine W. Grp., Inc.*, 48 F. App'x 15 (2d Cir. 2002).........................18

*Speer v. Danjon Cap., Inc.*,
No. 3:19-CV-1778, 2023 WL 2538126 (D. Conn. Mar. 16, 2023) ..........................................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................6, 7

*Stevens v. Malloy*,
No. 3:15-CV-934, 2016 WL 3198203 (D. Conn. June 7, 2016) ...............................9

*Tatem v. Perelmuter*,
No. 3:18-CV-382, 2018 WL 5299705 (D. Conn. Oct. 25, 2018) ...............................9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................................................7, 8

*Tunick v. Tunick*,
217 Conn. App. 106 (2022) ......................................................................................19

*United Coastal Industries, Inc. v. Clearheart Const. Co., Inc.*,
71 Conn. App. 506 (2002) ........................................................................................12

*Vertex, Inc. v. City of Waterbury*,
278 Conn. 557 (2006) ...........................................................................................11, 14

*Ward v. Schaefer*,
No. 16-12543-FDS, 2021 WL 1178291 (D. Mass. March 29, 2021) ......................12

*Welborn v. Internal Revenue Service*,
218 F.Supp.3d 64 (D.D.C. 2016) ...........................................................................2, 17

**STATUTES**

Conn. Gen. Stat. § 52-577.............................................................................................19

**RULES**

Fed. R. Civ. P. 12(b)(1)..................................................................................................6

Fed. R. Civ. P. 12(b)(6).................................................................................................6

## Introduction

It is clear from the Amended Complaint that Plaintiffs are gun owners.  After that it gets a bit hazy.  Plaintiffs say that when they bought firearms – over a span of decades – it was their "practice" to submit warranty cards, but they do not specify any firearm for which they did so. They allege that manufacturers and retailers improperly shared gun buyers' warranty card information with Defendant National Shooting Sports Foundation, Inc. ("NSSF"), but do not specify that *their* information was ever shared, what information that was, what company shared it, or when.  Plaintiffs say that NSSF used that warranty card information for voter outreach (mailings, targeted online ads), but do not say that they ever received such a mailing or ad. Plaintiffs then conclude that all of this caused them some unidentifiable harm.

Adding to the mystery, Plaintiffs have not sued any manufacturer or retailer, that is, the companies they say collected their information in the first place, allegedly made promises about how it would be used, and then handed it to NSSF.  They only sued NSSF, which has no relationship with Plaintiffs or any connection to Plaintiffs' firearm purchases, but *is* a long-standing nonprofit group that advocates for the firearm industry and recreational shooting.

And the problems run much deeper than that.  The Amended Complaint has several factual gaps that are ultimately fatal to its single claim:  that NSSF was unjustly enriched by using Plaintiffs' personal information without paying them for it.

*First*, Plaintiffs cannot meet the constitutional minimum for standing to invoke this Court's jurisdiction.  As detailed below, the Complaint does not allege any causal connection between NSSF and Plaintiffs that could support tracing any act by NSSF to any harm suffered by Plaintiffs. Plaintiffs do allege that they bought guns, and that NSSF used warranty card data for voter outreach, but they do *not* allege that *they* ever received that outreach.  They do not even allege that

they filled out a specific warranty card for a specific manufacturer, and that NSSF received their data from that particular manufacturer.

Nor can Plaintiffs show any concrete injury from NSSF's actions. They claim there is a market for the personal information at issue here and that NSSF's use of it to contact voters depressed the "market value" of that information. But they do *not* say that they ever tried to sell their *own* information and, even if they did, courts have recognized that there is no market for information about a single individual in the first place. Courts have "routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. Internal Revenue Service*, 218 F.Supp.3d 64, 78 (D.D.C. 2016).[1] Nor can Plaintiffs establish standing by arguing that *other* putative class members may have suffered harm.[2]

*Second*, Plaintiffs cannot establish any of the three elements of their single unjust enrichment claim – quantifiable benefit to the defendant, unjustly acquired from plaintiff, and at plaintiff's expense. To begin, NSSF did not receive a financial benefit because, as Plaintiffs allege, NSSF is a nonprofit organization that used the information for a nonprofit, constitutionally protected activity: communicating with voters. In turn, there was no "unjust" gain to NSSF, at

---

[1] *See, e.g. Brown v. State Farm Mutual Automobile Insurance Co.*, No. 23-C-6065, 2025 WL 81340, slip op. at *1, *9 (N.D. Ill. Jan. 13, 2025) (defendant, without notice, gave its customers' medical claims data to insurance association that used it to design insurance products, thus allegedly depriving plaintiffs of opportunity to sell and profit from their own information; unjust enrichment claim dismissed because personal information lacked independent monetary value); *In re Jetblue Airways Corp. Privacy Litigation*, 379 F.Supp.2d 299, 327 (E.D.N.Y. 2005) (finding plaintiffs' individual personal information had no compensable value where airline provided passenger data to data mining company); *In re DoubleClick Inc. Priv. Litig.*, 154 F.Supp. 2d 497, 525 (S.D.N.Y. 2001) ("[A]lthough demographic information is valued highly . . . the value of its collection has never been considered a economic loss to the subject. . . . we are unaware of any court that has held the value of this collected information constitutes damage to consumers or unjust enrichment to collectors.").

[2] *See, e.g.*, *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706, 1999 WL 20910, at *22 (D. Conn. Jan. 5, 1999) ("Standing cannot be acquired through the back door of a class action. '[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other unidentifiable members of the class . . .'") (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 at n. 20 (1976)).

least *vis-à-vis* Plaintiffs.  Plaintiffs cannot show that, even if NSSF were to buy personal information, that would have included *their* personal information, and NSSF would have bought it from *them*.  NSSF received nothing from Plaintiffs – they voluntarily gave their data to manufacturers and retailers, who then allegedly gave it to NSSF.  Finally, Plaintiffs have suffered no cognizable detriment.  Nothing in this sequence occurred at *their* expense; if anything, the data, purportedly given for free, was provided at the manufacturers' and retailers' expense.  And, as noted with regard to standing, an individual's personal information is not commercially viable in the first place.

*Third*, whatever the equitable limitations period is for an unjust enrichment claim, Plaintiffs are far past it.  No clever inferences from the Complaint's allegations are needed; it plainly states that Plaintiffs last bought firearms ten (Rimkus) or twenty (Cocanour) years ago, and that NSSF last used personal data from warranty cards eight years ago.  The analogous statute of limitations is that for the tort of invasion of privacy (three years), but even if the claim was more analogous to contract, that would be six years.  None of this activity was hidden; to the contrary, Plaintiffs' theory is that NSSF used warranty card data for expansive voter outreach – in other words, to contact the very people who Plaintiffs now say were harmed by what NSSF was doing.  There is nothing to excuse Plaintiffs' delay.

In short, shorn of general background allegations designed to make the routine seem sinister, Plaintiffs allege that (a) NSSF – as of at least eight years ago – used data from firearm warranty cards for voter outreach (*Amended Complaint* (ECF No. 33, "Am. Compl.") ¶¶ 1–18, 22–81); and (b) Plaintiffs – as of ten or twenty years ago – bought firearms and may or may not have filled out cards (*id*. ¶¶ 82–97).  That's it.  They allege no causal relationship between NSSF and Plaintiffs, much less articulate how NSSF harmed them.  They allege no activity in this decade.

The Amended Complaint is "lawfare" targeting a nonprofit advocacy group, dressed up as a demand for legal relief.  It should be dismissed.

## Background

Plaintiffs are residents of Oklahoma and Illinois who allege that over the last forty years they bought firearms from various manufacturers, none of which are named in this action.  Am. Compl. ¶¶ 82–88, 91–95.  Plaintiffs assert that it was their "practice" to fill out warranty cards that they then returned to those manufacturers, although neither of them identifies any specific card for any specific purchase, what, if any, specific privacy-related representations were made on any such cards, or what information they provided on a given card.  *Id.* ¶¶ 90, 97.

NSSF is a Connecticut-based nonprofit trade association for the firearms industry.  It advocates on behalf of manufacturers, distributors, retailers of firearms, ammunition and related products and services, shooting ranges, and sportsmen's organizations.  NSSF promotes the safe and responsible use of firearms and advocates to create a better political environment for the firearm industry.  Plaintiffs allege that in the 1990s, unbeknownst to Plaintiffs or other firearm purchasers, manufacturers and retailers began providing warranty cards to NSSF.  *Id.* ¶¶ 11, 30, 105.  Plaintiffs admit, however, that at least some of the warranty cards at issue "told customers that some information could be shared with third parties for marketing and sales," or for "market research studies and reports," or "mailings and special offers."  *Id.* ¶¶ 61–62.  Although Plaintiffs claim that other cards "affirmatively promised customers that their information would be kept strictly confidential," they do not identify any particular manufacturer or warranty card that made such a promise, let alone that Plaintiffs returned any such warranty cards.  *Id*. ¶ 61.  Notably, Plaintiffs do not allege that *NSSF* made any promises or owed any other obligations to them – about confidentiality or otherwise – and have not sued any of the manufacturers or retailers with which they directly interacted.

Plaintiffs allege that NSSF compiled this customer data in a database for use in voter outreach campaigns. *Id.* ¶¶ 11, 39–40, 43. But Plaintiffs' connection to these alleged events is unclear. Plaintiffs say in a conclusory fashion that "NSSF received Plaintiffs' personal information and used it for political purposes," *id.* ¶ 106, but they allege no fact supporting that statement. They do not identify any specific warranty card, or any specific detail of their personal information, that manufacturers supposedly shared with NSSF. Nor do they allege that they ever received a communication from NSSF. In other words, although their sole theory of liability is that NSSF was unjustly enriched by using their warranty card information to solicit potential voters (consumers), neither Plaintiff alleges that this ever happened to them.

Similarly, while Plaintiffs allege that they suffered "detriment" from not being paid for their information, *id.* ¶ 108, they allege no facts in support of that conclusion. They allege generally that individuals whose information is used without prior knowledge and consent may be denied "the ability to demand compensation," but do not claim, even generally, that this results from manufacturers' use of warranty card information, nor do they say that this happened to them. *Id.* ¶ 81. Neither Plaintiff alleges that he ever tried to sell his own information or that a market even existed for whatever (unspecified) information appeared on his individual (likewise unspecified) warranty cards. Even if Plaintiffs identified any warranty cards that they actually returned, they allege no facts supporting an inference that they would have been paid for the type of information they wrote on warranty cards, or would have been paid more, were it not for NSSF using that information.

Based on these allegations, Plaintiffs purport to represent a class of individuals whose personally identifiable information NSSF received from a manufacturer or retailer over a period spanning more than three decades (1990 to the present). *Id.* ¶ 98.

- 5 -

**Legal Standard**

Dismissal under Rule 12(b)(1) is required when a court lacks subject matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (holding dismissal proper under Rule 12(b)(1) where "court lacks the statutory or constitutional power to adjudicate [the case]" (internal quotations and citation omitted)). The Court has no subject matter jurisdiction where the plaintiff lacks standing to bring suit under Article III. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 343–44 (2016) (overturning reversal of dismissal order where plaintiff failed to satisfy concreteness requirement of Article III standing).

As to the merits, to survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Alleging facts that are "*merely consistent with a defendant's liability* . . . stops short of the line between possibility and plausibility." *Id.* (emphasis added) (internal quotations and citation omitted). To withstand dismissal, the plaintiff must provide more than "labels and conclusions," "naked assertion[s] devoid of [] factual enhancement," and "[t]hreadbare recitals of the elements of a cause of action." *Id.* (internal quotations and citation omitted).

**Argument**

**I.    Plaintiffs Do Not Have Standing Because They Have Alleged No Cognizable Harm, Much Less Harm Traceable to Actions Taken by NSSF**

A plaintiff cannot invoke federal jurisdiction without meeting the constitutional requirement of standing. Standing requirements "ensure the presence of that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Neurological*

*Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 225 (2d Cir. 2025) (internal quotations and citation omitted).  Plaintiffs must demonstrate (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

> **A.    Plaintiffs Cannot Establish a Concrete, Particularized Injury Sufficient to Meet Article III Requirements**

These requirements have teeth.  Plaintiff's injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations and citation omitted); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("No concrete harm, no standing.").   For an injury to be particularized, it must "affect[] the plaintiff in a personal and individual way," and to be concrete it must "actually exist[]." *Speer v. Danjon Cap., Inc.*, No. 3:19-CV-1778, 2023 WL 2538126, at *2 (D. Conn. Mar. 16, 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016)).  Injury must also be "actual or imminent," meaning "that the injury must have already occurred or be likely to occur soon." *Bueno v. Gen. Elec. Co.*, No. 1:24-CV-0822, 2025 WL 2719995, at *10 (N.D.N.Y. Sept. 24, 2025) (quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)).

Here, neither Plaintiff alleges an injury in fact, much less one that is "concrete, particularized, and actual or imminent." *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*, 98 F.4th 386, 392 (2d Cir. 2024).  First, Plaintiffs fail to adequately allege that NSSF ever possessed their warranty card information, much less used it in a manner that caused them harm.  Their sole allegation on this point is a single conclusory sentence that "NSSF received Plaintiffs' personal information and used it for political purposes," and "did not pay Plaintiffs for the receipt and use." *Id.* ¶¶ 106, 107.  This is insufficient, and the absence of supporting factual allegations is telling. *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard . . .

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Despite the extensive allegations about NSSF's political advertising campaigns, and even though Plaintiffs include multiple advertisements they claim NSSF sent using warranty card information, neither Plaintiff alleges even seeing an NSSF advertisement or receiving a single mailing.

The Amended Complaint instead relies on general contentions about what NSSF allegedly did with firearm purchasers' information and then asserts that Plaintiffs, too, bought firearms and filled out warranty cards. Am. Compl. ¶¶ 82–97. Although they do not explicitly say so, Plaintiffs' lawsuit seemingly rests on the allegation that NSSF used *some* firearm purchasers' warranty card information for voter outreach, and so NSSF must have possessed, and used, *Plaintiffs'* information for voter outreach, resulting in some kind of harm to Plaintiffs. This is not "concrete," "particularized," or "actual or imminent"; it is mere conjecture.[3]

Second, even if Plaintiffs had adequately alleged that NSSF used their warranty card information, Plaintiffs' general references to the market value of that information, *e.g.*, Am. Compl. ¶ 81, are not enough to establish constitutionally-cognizable harm. It is not enough to allege that *if* a plaintiff had tried to monetize his own personal information he *might* have made money. He must allege that he *was* injured – that he made an "actual" attempt and failed – or perhaps that he had concrete plans to try ("imminent"). *See, e.g.*, *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("[A]lthough [plaintiff] alleges that 'in the near future' he intends to 'utilize the website to reserve a guest room,' that is not sufficiently imminent to create an injury

---

[3] *See, e.g.*, *TransUnion*, 594 U.S. at 423 ("For there to be a case or controversy under Article III, the *plaintiff must have a 'personal stake' in the case*—in other words, standing." (emphasis added) (citation omitted)); *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 309 (2d Cir. 2024) (stating that plaintiff could not rely on "speculation and conjecture. . . . Rather, the plaintiff-employee must support a plausible theory as to *how* he was injured.") (emphasis in original) (internal quotations and citation omitted); *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706, 1999 WL 20910, at *22 (D. Conn. Jan. 5, 1999) ("Standing cannot be acquired through the back door of a class action. '[N]amed plaintiffs who represent a class must allege and show that they personally  have been injured, not that injury has been suffered by other unidentifiable members of the class . . .'") (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 at n. 20 (1976)).

in fact."); *Fero v. Excellus Health Plan, Inc.*, 236 F.Supp.3d 735, 755 (W.D.N.Y. 2017) (finding no standing based on diminution of value of personal data where plaintiffs alleged no facts to support claim that data breach deprived them of any value).

Here, Plaintiffs do not allege that they have tried to sell the kind of information they might have written on an unspecified warranty card, or that they had any plans to do so. *See, e.g.*, *Harty*, 28 F.4th at 443 ("Because [Plaintiff] asserted no plans to visit West Point or the surrounding area, he cannot allege that his ability to travel was hampered by West Point Realty's website in a way that caused him concrete harm."). Plaintiffs' bald assertions of harm do not sufficiently allege injury-in-fact for constitutional purposes.[4]

### B.    Plaintiffs Have Not Established That Any Action by NSSF is Traceable to Any Harm Plaintiffs Suffered

Even if Plaintiffs had alleged a cognizable harm, they have not shown that NSSF had any connection to it. *See Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (standing requires "a causal nexus between the defendant's conduct and the injury" (internal quotations and citation omitted)). If there is "too attenuated a causal chain" between the alleged injury and a defendant's actions, or that connection requires speculation, Article III requirements are not met. *See, e.g.*, *Tatem v. Perelmuter*, No. 3:18-CV-382, 2018 WL 5299705, at *4 (D. Conn. Oct. 25, 2018) (dismissing claims for lack of standing where allegations were "too attenuated a causal chain to indicate that his injury is fairly traceable to [the defendant's] conduct").[5]

---

[4] *See also, e.g.*, *Carlone v. Lamont*, No. 21-871, 2021 WL 5049455, at *2 (2d Cir. Nov. 1, 2021) ("Although a plaintiff can establish an injury in fact by plausibly alleging 'even a small financial loss,' Carlone's allegation is too conclusory to support a finding of a concrete and particularized injury: It simply states a conclusion that his business has been injured, unaccompanied by any supporting factual allegations . . .") (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256, 2011 WL 1661532, at *4–5 (C.D. Cal. Apr. 28, 2011) ("Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party.").

[5] *See also, e.g.*, *Stevens v. Malloy*, No. 3:15-CV-934, 2016 WL 3198203, at *7–8 (D. Conn. June 7, 2016) (finding no standing where plaintiff alleged that judge's failure to timely rule on motion was attributable to chief

Here, on one hand, Plaintiffs allege that they may have filled out warranty cards.  On the other hand, they allege that NSSF used warranty card information it received from manufacturers and retailers to solicit voters.  In the middle?  Nothing, beyond (a) allegations that NSSF, at some point, used someone's warranty card information for get-out-the-vote efforts, and (b) the conclusory allegation that NSSF received Plaintiffs' personal information (*e.g.*, Am. Compl. ¶ 106), even though Plaintiffs fail to allege that they ever received outreach from NSSF.  Moreover, though carefully worded, Plaintiffs do not even allege that they submitted a specific warranty card for a specific firearm purchase, but only that – over the course of decades – it was their "practice" to submit them.  *See id.* ¶¶ 90 (Cocanour), 97 (Rimkus).[6]  In short, Plaintiffs do not allege any fact linking any act *performed by NSSF* and any harm suffered *by either Plaintiff*.  *See, e.g.*, *Brady v. Basic Rsch., LLC*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (plaintiff failed to "plausibly allege an injury traceable" to defendant where plaintiff did not allege reliance on defendant's advertisements).

Moreover, Plaintiffs' theory of harm seems to rest on a decrease in the value of their warranty card information, but they do not allege that NSSF (or anyone) would have paid them for that information had the manufacturers not shared it, nor do they claim that the use of warranty card information for political advertising prevented anyone *else* from buying that information from Plaintiffs or otherwise decreased its value.  *See, e.g., In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022), *report and rec. adopted*, No. 21CV790JLSMJR, 2022 WL 3045319, at *7 (W.D.N.Y. Aug. 1, 2022) (plaintiffs failed to allege

---

justice's failure to train judges; "[t]he Supreme Court has made clear that speculation of this kind is insufficient to establish proper causation and Article III standing.").

    [6] Perhaps to better conceal the causal gap, Plaintiff Rimkus takes pains to note that "[h]is attitude (until he learned of the practices alleged in this complaint) was always that it was in his best interest to return warranty cards." Am. Compl. ¶ 97.

concrete or actual injury where they did not "allege that they attempted to sell their personal information and were forced to accept a decreased price, nor do they allege any details as to how their specific, personal information has been devalued because of the breach").

Finally, as is apparent from the Amended Complaint itself, Plaintiffs do not allege that NSSF improperly shared Plaintiffs' warranty card information, but only that the manufacturers and retailers did.  Am. Compl. ¶¶ 26, 30, 35, 37, 39, 43, 105.  Even assuming such a claim was viable, any decrease in the value of Plaintiffs' warranty card information would stem from the manufacturers or retailers, not NSSF.  *See, e.g.*, *Edwards v. United States*, 249 F.R.D. 25, 29 (D. Conn. 2008) (finding lack of standing because officials who violated plaintiffs' constitutional rights were not federal employees, so actions not fairly traceable to named defendant).

## II.    <u>Plaintiffs Fail to State a Claim for Unjust Enrichment</u>

The same defects undermine Plaintiffs' sole claim for relief.  The Amended Complaint alleges no contractual or other direct relationship between Plaintiffs and NSSF, nor that NSSF made any representations to Plaintiffs.  Lacking bases for contractual or fraud claims, Plaintiffs try to reach NSSF through an equitable theory of unjust enrichment, but the Amended Complaint establishes none of the three elements of such a claim:  that (1) the defendant received a benefit from the plaintiff, (2) the defendant unjustly did not pay the plaintiff for that benefit, and (3) the failure of payment was to the plaintiff's detriment. *See, e.g.*, *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006).  In their effort to reach NSSF on *some* theory of liability, Plaintiffs try to fit a square peg into a round hole.

### A.    **Plaintiffs Fail to Allege That NSSF Received Any Legally Cognizable Benefit, Because They Allege Only That a Nonprofit Entity Used Information for Nonprofit Purposes**

First, Plaintiffs do not allege that NSSF received a type of benefit that is cognizable for an unjust enrichment claim under Connecticut law.  "[T]he theory of unjust enrichment focuses on

the existence of a benefit – a financial benefit that has value, whether in the form of title to real property, the value of improvements or services rendered, or a direct transfer of cash by a non-party intermediary who has multiple claims being made against limited assets." *HBR Trumbull, LLC v. Mager*, No. FBTCV236124694S, 2024 WL 5252338, at *10 (Conn. Super. Ct. Dec. 24, 2024); *see also United Coastal Industries, Inc. v. Clearheart Const. Co., Inc.*, 71 Conn. App. 506, 512 (2002) ("unjust enrichment relates to a benefit of money or property").

A benefit must have a measurable financial value to form the basis of an unjust enrichment claim. *See Ward v. Schaefer*, No. 16-12543-FDS, 2021 WL 1178291, at *25 (D. Mass. March 29, 2021) (finding no unjust enrichment where plaintiff's participation in defendant's study did not measurably increase defendant's wealth or provide a measurable advantage). Otherwise, a plaintiff could seek compensation for any number of intangible and unquantifiable "benefits," for example, claiming that, after a purchase, an online retailer was unjustly enriched by having a box with its logo delivered to a plaintiff's front porch, or that a neighbor was unjustly enriched by enjoying her view of a plaintiff's flowers.

Here, Plaintiffs' allegations pertaining to NSSF's gain amount to receiving and using information about firearms purchasers for a non-business, political purpose. Am. Compl. ¶¶ 11, 35–36, 106. These benefits are not financial in nature; any benefit to NSSF's ability to engage in its non-commercial speech is impossible to quantify financially – not the least because NSSF is a nonprofit organization.[7] In fact, Plaintiffs allege that NSSF *spent* money to further its voter

---

[7] *See ExamWorks, Inc. v. Soltys*, No. 17-CV-0080-LJV-MJR, 2017 WL 4712206, at *5 (W.D.N.Y. Aug. 10, 2017), *report and rec. adopted*, No. 17-CV-80, 2017 WL 4680410 (W.D.N.Y. Oct. 18, 2017) (dismissing unjust enrichment counterclaim alleging plaintiff restrained defendant's ability to make a living, made false statements about defendant to friends and business associates, and wrongfully diverted defendant's business relationships, as "there is no specific or quantifiable benefit, such as monetary gain, received by defendant, as a result of these actions."); *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F.Supp.3d 573, 592 (N.D. Ill. 2022) (noting that courts have "routinely rejected the proposition that an individual's personal identifying information has an independent monetary value" (internal quotations and citation omitted)).

outreach efforts. Am. Compl. ¶ 33. Plaintiffs' claim that NSSF used the warranty card information to engage in voter outreach efforts – a non-commercial activity – does not establish the *monetary* benefit necessary for an unjust enrichment claim. *See Brooks v. Peoples Bank*, 732 F.Supp.3d 765, 782 (S.D. Ohio 2024) ("Plaintiffs cannot recover the 'value' of their PII because they fail to allege [Defendant] benefited in that amount, for example by selling or profiting off of their PII in any way . . . .").[8]

In turn, Plaintiffs' conclusory speculation that NSSF may have *saved* money by allegedly getting warranty card data for free, Am. Compl. ¶ 74, is not enough to establish a cognizable financial benefit, as Plaintiffs allege nothing to show that NSSF otherwise would have bought that information, would have bought it from Plaintiffs, or avoided any specific purchase as a result of others sharing the warranty card information without seeking payment. Plaintiffs merely suggest that it is *possible* for NSSF to have benefitted financially by not having to buy data from brokers, but that alone is insufficient to satisfy the plausibility standard in *Iqbal.* 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

In short, Plaintiffs' conclusory assertions that NSSF "benefited" from using certain information is insufficient to allege the measurable financial gain this claim requires. *See Bell v. Survey Sampling Int'l LLC*, No. 3:15-cv-1666, 2017 WL 1013294, at *8 (D. Conn. March 1, 2017) (dismissing unjust enrichment claim where plaintiff made "only the conclusory statement that

---

[8] *See also*, *e.g.*, *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at *18 (D.N.J. Dec. 16, 2021) (dismissing unjust enrichment claim where plaintiffs alleged only vague allegations that defendants collected personal information for "commercial gain" but alleged "no facts showing how Defendants reaped monetary benefits or otherwise profited from Plaintiffs' Personal Information.").

'Defendant has obtained substantial benefit as a direct result of their invasion of the privacy of Plaintiff and members of the Plaintiffs class'").

**B.    Even if NSSF Received a Cognizable Benefit, It Did Not Receive That Benefit From Plaintiffs, and so NSSF Did Not "Unjustly" Fail to Compensate Them**

Plaintiffs also fail to allege that NSSF "unjustly" failed to pay them for their warranty card information.  There can only be a viable claim for unjust enrichment where a defendant receives a benefit at the *plaintiff's* expense.  *See, e.g.*, *Geriatrics, Inc. v. McGee*, 332 Conn. 1, 24 (2019) ("A plaintiff may recover for unjust enrichment . . . to the extent that the defendant has unjustly profited at the plaintiff's expense.").  The claim sounds in equity – the point is to address the unfairness of someone profiting from using another's property without permission or recompense.  *Vertex, Inc.*, 278 Conn. at 573 ("A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." (internal quotations and citation omitted)).

Here, the flaw in Plaintiffs' complaint is essentially causal: even assuming that Plaintiffs returned any warranty cards, they *voluntarily* provided that information to manufacturers and/or retailers (in exchange for "certain benefits," Am. Compl. ¶ 60), who in turn *voluntarily* shared it with NSSF.  NSSF did not receive Plaintiffs' warranty card information at Plaintiffs' expense, but from manufacturers and/or retailers who *legitimately possessed* the warranty card information and allegedly gave it to NSSF without charge.  NSSF received nothing from Plaintiffs and – more importantly – took nothing from Plaintiffs.  *See Bell v. Survey Sampling Int'l, LLC*, No. 3:15-cv-

1666, 2017 WL 1013294, at *8 (D. Conn. March 1, 2017) (unjust enrichment claim dismissed because plaintiff failed to allege that defendant received money or property from plaintiff).[9]

In short, so long as the ultimate beneficiary in the transactional chain (here, NSSF) has honored whatever arrangement it had with the party directly providing the benefit (here, manufacturers and retailers), the beneficiary has not "unjustly" received anything. Any dispute over whether Messrs. Cocanour and Rimkus should have been paid for their information is between them and the manufacturers or retailers, not between them and NSSF.

### C.    Plaintiffs Fail to Allege That They Have Suffered Any Cognizable Financial Detriment

Finally, putting aside whether NSSF profited and, if it did, at whose expense, Plaintiffs also fail to allege that they themselves suffered a legally cognizable detriment. In the unjust enrichment context, detriment – just like benefit – must be financially quantifiable. *Michel v. Yale Univ.*, No. 3:20-CV-01080, 2023 WL 1350220, at *7 (D. Conn. Jan. 30, 2023), *aff'd*, 110 F.4th 551 (2d Cir. 2024) (unjust enrichment claim failed "without an ability to demonstrate financial detriment"); *see Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 566 F. Supp. 2d 81, 103 (D. Conn. 2008), *aff'd*, 567 F.3d 79 (2d Cir. 2009) (failure to prove alleged "monetary damages" was fatal to unjust enrichment claim).

Here, neither Plaintiff identifies a financial detriment he has suffered as a result of NSSF's alleged use of his warranty card information. Although the Amended Complaint opines generally about the market for personal information, Plaintiffs' theory seems to be that they would have been able to sell the information they entered on a warranty card, or they would have been able to sell it for a higher value, if NSSF had not used it instead. *See* Am. Compl. ¶ 81. But generic assertions

---

[9] "[Plaintiff] does not allege that SSI received any money or property from her, directly or indirectly, or even that she participated in SSI's survey questionnaire. There are no facts in the complaint suggesting that SSI received any benefit as a result of its interaction with her. Her unjust enrichment claim therefore fails as a matter of law."

that people can lose a financial opportunity when someone else uses their personal information are speculative. Consider that neither Plaintiff has managed to allege:

- The *specific personal information* he entered on a warranty card for purchase of a firearm;
- Whether *that* personal information is marketable in the first place (that is, did that information expand beyond, for example, merely name and address? If it did, is the additional information the kind of data marketers buy?);
- Assuming marketability, that either Plaintiff *ever tried, or plans to try*, to sell *that* personal information; or
- That, *but for* NSSF using their warranty card information, they would have been *able* to sell it, or sell it for more than otherwise.

Courts have frequently dismissed cases in the data context that suffer these flaws. In order to survive a motion to dismiss, a plaintiff "must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market." *Pruchnick v. Envision Healthcare Corp.*, 439 F.Supp.3d 1226, 1234 (D. Nev. 2020) (internal quotations and citation omitted). Plaintiffs here assume that someone, somewhere, would have been willing to pay for the name, address, gun ownership history, and other non-financial information about a single individual. But Plaintiffs fail to allege that an actual market exists for such information, or that – even if it did – Plaintiffs ever tried to participate in it. In *Pruchnick*, the court granted a motion to dismiss where plaintiff made "only a handful of conclusory allegations" to support her purported damages and otherwise failed to allege: (1) that she had been unable to sell or monetize her private information, or that she had even tried to sell it, (2) how the value of her personal information had been reduced, and (3) any details about the supposed "well-established and quantifiable national and international market" for her personal information. *Id.* at 1235. (internal quotations and citation omitted).

Nothing Plaintiffs allege plausibly supports the existence of a market for individual, as opposed to aggregate, personal information, and courts have "routinely rejected the proposition

that an individual's personal identifying information has an independent monetary value." *Welborn v. Internal Revenue Service*, 218 F.Supp.3d 64, 78 (D.D.C. 2016). For example, in a recent federal decision, plaintiff insureds alleged that their insurance company, State Farm, gave an industry association billions of claims-related records, including reports containing plaintiffs' private health information. *See Brown v. State Farm Mut. Auto. Ins. Co.*, No. 23-C-6065, 2025 WL 81340, slip op. at *1, *9 (N.D. Ill. Jan. 13, 2025). The *Brown* plaintiffs alleged they had not been told that their information was given to ISO, which analyzed the data to create products and services generating billions of dollars, and that plaintiffs were thus deprived of the opportunity to personally profit from selling their own information. *Id.* Because individual personal information does not have inherent independent monetary value, the *Brown* Court dismissed the plaintiffs' unjust enrichment claim. *Id.* at *9.

Similarly, in *In re Jetblue Airways Corp. Privacy Litigation*, the court, in granting defendant's motion to dismiss, found "no support for the proposition that an individual passenger's personal information has or had any compensable value in the economy at large," and that it "strain[ed] credulity" to believe that had defendant not provided the plaintiffs' data to a third party, the third party would have compensated each individual plaintiff for access to his or her personal information. 379 F.Supp.2d 299, 327 (E.D.N.Y. 2005). As another district court observed, "[A]lthough demographic information is valued highly . . . the value of its collection has never been considered a economic loss to the subject. . . . *we are unaware of any court that has held the value of this collected information constitutes damage to consumers or unjust enrichment to collectors*." *In re DoubleClick Inc. Priv. Litig.*, 154 F.Supp. 2d 497, 525 (S.D.N.Y. 2001) (emphasis added) (dismissing computer intrusion claim based on defendant collecting and selling plaintiffs' demographic information through the use of cookies).

In short, Plaintiffs' unjust enrichment claim fails because they have not been deprived of something (profit from selling their own personal data) that must be restored, much less restored by NSSF. *See Michel*, 2023 WL 1350220, at *6 (unjust enrichment is grounded in the theory of "restor[ing] to a party of something of which he was deprived because of the unjust enrichment of another at his expense" (internal quotations and citation omitted)).

## III. Plaintiffs' Claims are Untimely Because the Most Recent Activity Alleged in the Amended Complaint Happened Nearly Ten Years Ago

Finally, Plaintiffs' claim is barred by laches, which bars equitable claims when a plaintiff lacks sufficient excuse for delay and that delay prejudiced the defendant. *Reclaimant Corp. v. Deutsch*, 332 Conn. 590, 613 (2019). Courts will dismiss actions on laches grounds where "the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar."[10]

The Amended Complaint essentially alleges that, at some point, Plaintiffs may have filled out warranty cards for firearms and that, at some point, NSSF began using warranty card information shared by manufacturers and/or retailers. Am. Compl. ¶¶ 11, 89–90, 96–97. This culminates in NSSF allegedly providing warranty card information to Cambridge Analytica to help with voter outreach efforts in 2016. Am. Compl. ¶¶ 47–58. And that's where the story ends. The Amended Complaint is striking for its failure to allege *any* activity after 2017, and even that most-recent allegation is merely a conclusory statement about NSSF continuing to maintain warranty

---

[10] *Solow Bldg. Co., LLC v. Nine W. Grp., Inc.*, No. 00 CIV. 7685, 2001 WL 736794, at *3–6 (S.D.N.Y. June 29, 2001), *aff'd sub nom. Solow Bldg. Co., LLC. v. Nine W. Grp., Inc.*, 48 F. App'x 15 (2d Cir. 2002) (internal quotations and citation omitted) (finding the plaintiff's claims barred by laches where plaintiffs waited over twenty years to bring claim and allowed defendants to expand their business while relying on the use of the trademark in question); *Madison Square Garden, L.P. v. Nat'l Hockey League*, No. 07 CV 8455, 2008 WL 4547518, at *10 (S.D.N.Y. Oct. 10, 2008) (dismissing antitrust claim on laches grounds where renewal of licensing agreements did not constitute "new and independent act" for purposes of establishing a continuing violation and plaintiff therefore had not diligently pursued claims that pre-dated analogous statute of limitations; "(l)aches may be decided on the pleadings if unreasonable delay and prejudice are clear on the face of the complaint.").

card data.  *Id.* ¶ 43 (describing NSSF's alleged database of warranty card data as of June 2017).  Neither Plaintiff alleges that he completed a warranty card after 2017.  *Id.* ¶ 95 (identifying Plaintiffs' most recent firearms purchase as occurring "in 2016-17").  Thus, the most recent operative activity alleged in the Amended Complaint is about nine years old.  The earliest activity alleged specific to NSSF is almost *thirty* years old.  *Id.* ¶ 30 (alleging that a retailer gave NSSF a list of customers in June 1997).

Courts often look to analogous statutes of limitations "to determine whether, in the interests of justice, a particular action should be heard," *Reclaimant*, 322 Conn. at 613 (internal quotations and citation omitted), and "[t]he appropriate statute of limitations to be examined by analogy is the one that applies to the underlying legal cause of action," *Hartford Underwriters Ins. Co. v. Plymouth Home Improvements, LLC*, No. CV116020310S, 2012 WL 1959016, at *2 (Conn. Super. Ct. May 1, 2012) (citing *Giordano v. Giordano*, 39 Conn. App. 183, 215–16 (1995)).[11]  Here, the most analogous statute of limitations to Plaintiffs' claim, which sounds in invasion of privacy, is the three-year period for torts.  *See, e.g.*, *Gallagher v. U.S. Bank Nat'l Ass'n*, No. 3:14-CV-1877, 2017 WL 2111593, at *12 (D. Conn. May 15, 2017).  Generally, Connecticut applies the "occurrence rule," in which "the limitations period typically begins to run as of the date the complained of conduct occurs, and not the date when the plaintiff first discovers his injury." *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F.Supp.3d 239, 255 (D. Conn. 2015) (internal quotations and citation omitted).

There is no excuse for Plaintiff's delay in bringing claims based on conduct that occurred – at the very least – more than *eight years* ago.  Realizing this, Plaintiffs make a conclusory

---

[11] Under Connecticut law, unjust enrichment claims do not carry a specific limitation period.  *Tunick v. Tunick*, 217 Conn. App. 106, 113 (2022) ("*Reclaimant Corp.* makes no exception to its holding that unjust enrichment claims are not bound by a statute of limitations.  A claim of unjust enrichment, which sounds neither in tort nor in contract, is an equitable claim for relief that is not subject to *any* statute of limitations, including § 52-577." (emphasis in original)).

allegation that, "at all times," manufacturers "concealed" transferring personal data to NSSF, and NSSF "concealed" receipt of it. Am. Compl. ¶ 65. They allege no fact to support this accusation, and it is absurd: if Plaintiffs' allegations are true, no later than 2016 NSSF used warranty card data, amplified by Cambridge Analytica, to reach millions of voters with NSSF ads. Plaintiffs' *entire theory* is that the violation involved contacting the very people they now say had no idea what was happening. If Plaintiffs themselves did not become aware of this alleged activity until recently, that's because they never received outreach from NSSF.

Further, NSSF has been unavoidably prejudiced by Plaintiffs' delay. Most of the events in the Amended Complaint happened, literally, decades ago. NSSF is a small nonprofit organization. Even the most recent activity is far enough in the past that relevant employees have left, taking institutional knowledge with them, and making relevant documents and data significantly harder to find. NSSF is now forced to defend against this publicly-filed claim without the benefit of ready access to the witnesses and evidence that would have existed had the claim been brought in, say, 2005 or even 2015.

Connecticut courts take this concern seriously. For example, in *Litchfield Property Management, Inc. v. Robert Holliday Reid*, the court found that the plaintiff's three-and-a-half year delay in bringing an unjust enrichment unduly prejudiced the defendants. No. CV166013974S, 2021 WL 4125920, at *5 (Conn. Super. Ct. Aug. 18, 2021). The *Litchfield* court acknowledged that "[t]he parties could not reasonably be expected to keep, for that length of time, various records of transactions that were regularly engaged on an oral basis." *Id.*; *see also Ardaji v. Columbia Pictures Industries, Inc.*, No. CV196040356S, 2020 WL 8024813, at *8 (Conn. Super. Ct. Nov. 20, 2020) (dismissing claim as seventeen-year delay prejudiced defendant due to loss of witnesses and data). NSSF has been put at an unfair, and unjustifiable, disadvantage by the passage of time. This is why the laches defense exists.

## **Conclusion**

For the reasons set forth above, Plaintiffs' Amended Complaint should be dismissed.

<div style="margin-left:40%">

NATIONAL SHOOTING SPORTS
FOUNDATION, INC.,

By its Counsel,

*/s/ Wystan M. Ackerman*
Wystan M. Ackerman (ct24090)
Kevin P. Daly (ct30380)
Robinson & Cole LLP
One State Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
wackerman@rc.com

Andrew Lelling (phv208956)
Yvonne Chan (phv208952)
Jenna LaPointe (phv10450)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Telephone: (617) 960-3939
alelling@jonesday.com
ychan@jonesday.com
jlapointe@jonesday.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Wystan M. Ackerman*