**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DANIEL COCANOUR and DALE RIMKUS, on behalf of all those similarly situated,<br><br>                       Plaintiffs,<br><br>   v.<br><br><br>NATIONAL SHOOTING SPORTS FOUNDATION, INC.<br><br>                       Defendant. | Civil Action No. 3:25-cv-1571 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND................................................................................................. 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT......................................................................................................................... 5

    I.      Plaintiffs have standing to bring their claim......................................................... 5

          A.     Plaintiffs have alleged an injury in fact. ................................................ 5

          B.     Plaintiffs have alleged that it is Defendant who caused the
                injury in fact. ....................................................................................... 10

    II.     Plaintiffs have plausibly alleged their claim for unjust enrichment. ................. 12

          A.     Defendant received a cognizable benefit. ............................................. 13

          B.     Defendant received the benefit from Plaintiffs, even if it
                passed through the hands of third parties............................................... 18

          C.     Defendant's lack of payment was to Plaintiffs' detriment. ................... 19

    III.    Plaintiffs' claim is not barred by laches........................................................... 26

CONCLUSION.................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) .................................................................................. 10, 11

*Ardaji v. Columbia Pictures Indus., Inc.*,
  No. CV196040356S, 2020 WL 8024813 (Conn. Super. Ct. Nov. 20, 2020) ........................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................4

*Barnes v. City of New York*,
  68 F.4th 123 (2d Cir. 2023) .......................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................4, 19

*Bell v. Survey Sampling Int'l, LLC.*,
  No. 3:15-CV-1666 (MPS), 2017 WL 1013294 (D. Conn. Mar. 15, 2017) ..................... 14, 19

*Bohnak v. Marsh & McLennan Cos.*,
  79 F.4th 276 (2d Cir. 2023) ................................................................... 5, 6, 7, 11

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
  566 F. Supp. 2d 81 (D. Conn. 2008), *aff'd*, 567 F.3d 79 (2d Cir. 2009)................................22

*Brooks v. Peoples Bank*,
  732 F. Supp. 3d 765 (S.D. Ohio 2024)...........................................................................16

*Brown v. State Farm Mut. Auto. Ins. Co.*,
  2025 WL 81340 (N.D. Ill. Jan. 13, 2025)........................................................................25

*Cadle Co. v. Gabel*,
  794 A.2d 1029 (Conn. App. Ct. 2002) ............................................................................21

*Carter v. Health Port Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) ...........................................................................................4

*Conn. Gen. Life Ins. Co. v. Bio Health Lab'ys, Inc.*,
  988 F.3d 127 (2d Cir. 2021) .......................................................................................27

*Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*,
  573 F. Supp. 3d 671 (D. Conn. 2021) .......................................................................26, 27

*CTC Real Est. Servs v. Lepe*,
  44 Cal. Rptr. 3d 823 (Cal. Ct. App. 2006).......................................................................15

*Deere & Co. v. MTD Prods., Inc.*,
No. 00-CIV-5936, 2001 WL 435613 (S.D.N.Y. Apr. 30, 2001) ..........................................26

*Franks v. Lockwood*,
150 A.2d 215 (Conn. 1959) .................................................................... 18, 24, 25

*Geriatrics, Inc. v. McGee*,
208 A.3d 1197 (Conn. 2019) ...................................................................... 18, 19

*Gilpatric v. Hartford*,
120 A. 317 (Conn. 1923) ...............................................................................17

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,
649 A.2d 518 (Conn. 1994) ....................................................................*passim*

*Hinchliffe v. Am. Motors Corp.*,
440 A.2d 810 (Conn. 1981) ...........................................................................23

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...............................................16

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)...................................................................16

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)...................................................................25

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..................................................................15

*In re Facebook, Inc., Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........................................................................15

*In re Jetblue Airways Privacy Litigation*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................25

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)...............................................................23, 24

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ................................................................23

*Jones v. Strum, Ruger & Co.*,
No. 3:22-cv-1233 (KAD), 2024 WL 1307148 (D. Conn. Mar. 27, 2024) ........................6, 22

*Lionetta v. InMarket Media, LLC*,
798 F. Supp. 3d 139 (D. Mass. 2025)...................................................................15

*Litchfield Property Mgmt., Inc. v. Robert Holliday Reid*,
No. CV166013974S, 2021 WL 4125920 (Conn. Super. Ct. Aug. 18, 2021) ........................28

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) .......................................................................................................4

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020) ................................................................................................*passim*

*Michel v. Yale Univ.*,
547 F. Supp. 3d 179 (D. Conn. 2021) .....................................................................................22

*Michel v. Yale Univ.*,
No. 3:20-CV-01080 (JCH), 2023 WL 1350220 (D. Conn. Jan. 30, 2023) ...........................22

*Monarch Acct. Supplies, Inc. v. Prezioso*,
368 A.2d 6 (Conn. 1976) .........................................................................................................20

*Murray v. Conn. Coll.*,
No. 3:24-cv-01099-MPS, 2025 WL 2712664 (D. Conn. Sept. 23, 2025).................... 5, 12, 22

*Nielsen v. AECOM Tech. Corp.*,
762 F.3d 214 (2d Cir. 2014) ......................................................................................................4

*Orlando v. Liburd*,
_ A.3d _, 353 Conn. 845 (Conn. 2026) ...................................................................................18

*Polverari v. Peatt*,
614 A.2d 484 (Conn. 1992) ......................................................................................................12

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020) .....................................................................................25

*Reclaimant Corp. v. Deutsch*,
211 A.3d 976 (Conn. 2019) ................................................................................................26, 27

*Schirmer v. Souza*,
12 A.3d 1048 (Conn. App. Ct. 2011) ................................................................................17, 24

*Solow Bldg Co., LLC v. Nine W. Grp., Inc.*,
No. 00 Civ. 7685(DC), 2001 WL 736794 (S.D.N.Y. June 29, 2001)..................................28

*State Farm Mut. Auto. Ins. Co. v. Valery Kalika*,
No. 04-CV-4631, 2006 WL 6176152 (E.D.N.Y. Mar. 16, 2006).........................................26

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ...................................................................................................................5

iv

*Town of New Hartford v. Conn. Res. Recovery Auth.*,
    970 A.2d 592 (Conn. 2009) ..................................................................... 12, 18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...................................................................................5, 6

*Universitas Educ., LLC v. Benistar*,
    No. 3:20-cv-00738 (KAD), 2023 WL 4932034 (D. Conn. Aug. 2, 2023) ..............................4

*Ward v. Schaefer*,
    No. 16-12543-FDS, 2021 WL 1178291 (D. Mass. Mar. 29, 2021) ......................................14

*Welborn v. Internal Rev. Serv.*,
    218 F. Supp. 3d 64 (D.D.C. 2016) .................................................................25

*Zuckerman v. Metro. Museum of Art*,
    928 F.3d 186 (2d Cir. 2019) ......................................................................27

## Statutes

42 U.S.C. § 1983..............................................................................................8

## Rules

Fed. R. Civ. P. 12(b)(1)................................................................................3, 12

Fed. R. Civ. P. 12(b)(6)................................................................................4, 26

## Other Authorities

*Restatement (First) of Restitution* § 1 cmt. b (1937)............................................. 14, 21

*Restatement (First) of Restitution* § 160 cmt. d (1937).............................................21

*Restatement (Third) Restitution and Unjust Enrichment* § 48 (2011) ........................................19

## **INTRODUCTION**

The thrust of this action, brought by longtime firearms owners Daniel Cocanour and Dale Rimkus, is simple. They, and millions of similarly situated Americans, provided their private, often sensitive, personally identifying information to firearms manufacturers and retailers. Defendant, however, in knowing breach of the promises of privacy that the firearms manufacturers and retailers made to Plaintiffs and others, has been surreptitiously receiving and using that information for political purposes. In a world where data may be the most valuable resource of all, Defendant unjustly extracted reams of private data for free while keeping the benefits for itself.

Plaintiffs Cocanour and Rimkus thus have standing to bring their claim for unjust enrichment because they suffered injury to their privacy interests. This is an injury that binding precedent recognizes as sufficient under Article III. It is also an injury that was caused by Defendant's unauthorized receipt and use of Plaintiffs' private, personally identifying information.

They have also sufficiently alleged a claim for unjust enrichment. Defendant received multiple benefits for free: the use of Plaintiffs' private, personally identifying information to disseminate advertisements, and the retention of information that has measurable monetary value. These benefits are cognizable under Connecticut law. Its use and retention of the information was also unjust under Connecticut law, because it violated the agreements that Plaintiffs had made with firearms manufacturers and retailers, and Plaintiffs have a superior claim to the use of their information than does Defendant. Defendant's failure to pay Plaintiffs for their information, finally, was very much to Plaintiffs' detriment under Connecticut law, not only because it stripped them of a legally enforceable right under their agreements with firearms manufacturers and retailers, but also because it deprived them of the right under those agreements to control the use of information that has measurable monetary value.

Nor is Plaintiffs' claim is barred by the equitable defense of laches. Defendant was able to conceal its misconduct until recently. Any delay is due to Defendant's concealment, not to Plaintiffs' neglect.

For all these reasons, Defendant's motion should be denied.

## FACTUAL BACKGROUND

Beginning in the 1990s and running through at least the 2016 U.S. presidential election, Defendant, which describes itself as the "trade association for the firearms industry," built a vast database containing the private, personally identifying information of firearms consumers. Dkt. No. 33 (Amended Complaint), ¶¶ 19, 22–58 (describing Defendant's extensive history of collecting and using that information). Since the 2000 election cycle, Defendant has used this information repeatedly to inform political campaigns, target voters, and influence election results. *Id.*

A foundational source of information for the database were the warranty cards filled out by firearms purchasers and returned to firearms manufacturers and retailers. *Id.* ¶¶ 24–25, 59. Warranty cards captured not only contact information, but all kinds of characteristics of the consumer, like gender, age, socioeconomic background, and interests. *Id.* ¶ 25. Warranty cards generally collected highly personal information, like annual income, vehicle, education, and pet ownership. *Id.* Consumers filled out these warranty cards in exchange for certain benefits, like rebates, repair or replacement programs, or discounts. *Id.* ¶¶ 59–60.

Crucially, none of the warranty cards at issue here disclosed to purchasers that their information would be given to Defendant or used for political purposes. *Id.* ¶ 61. To the contrary, some warranty cards affirmatively promised that information would be kept confidential, while others simply omitted its political use. *Id.*; *see also id.* ¶ 62 (language from Remington Arms Company warranty card); *id.* ¶ 64 (language from Cabela's warranty card).

Plaintiffs Cocanour and Rimkus purchased numerous firearms between the late 1980s and mid-2010s, and each purchase was accompanied by a warranty card. *Id.* ¶¶ 82–89, 91–96. Plaintiff Cocanour's practice whenever he purchases a new firearm is to return the fully filled-out warranty card for that firearm or (for more recent purchases) to submit the same information online. *Id.* ¶ 90. Plaintiff Rimkus's normal practice was to fully fill out a warranty card and mail it in within two or three weeks after purchasing a firearm. *Id.* ¶ 97. His attitude, until learning of Defendant's misconduct, was always that it was in his best interest to return warranty cards. *Id.*

The private, personally identifying information contained in warranty cards, including the information provided by Plaintiffs, has measurable financial value in a variety of contexts, including politics and voter engagement. *Id.* ¶¶ 66–81. For years, political campaigns have combined data on voters from a variety of sources, to develop detailed profiles of each voter. *Id.* ¶ 74. Use of personally identifying information has enhanced political campaigns' capacity to identify, reach, and interact with individual citizens; to reach out and appeal to small donors; and to more efficiently generate turnout. *Id.* ¶ 75. Using personal data about voters, campaigns can build predictive models to target their communications more efficiently and support more effective strategies. *Id.* ¶ 76.

Thus, the unauthorized acquisition and use of personally identifying information not only depresses the market value of that information but also deprives the individuals of the ability to demand compensation for it. *Id.* ¶ 81. It also compromises the individuals' privacy and autonomy. *Id.* For those reasons, Plaintiffs now bring this action.

## **LEGAL STANDARD**

A motion under Rule 12(b)(1) may be either "based solely on the allegations of the complaint and exhibits attached to it (collectively the 'Pleading')," or may be "fact-based," in which case the defendant must "proffer[] evidence beyond the Pleading" to "contradict" a

3

plaintiff's "plausible allegations." *Carter v. Health Port Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). Because Defendant has failed to proffer evidence of its own to contradict Plaintiffs' allegations, Plaintiffs "ha[ve] no evidentiary burden." *Id.* at 56. Rather, in this posture, courts "accept[] as true all material factual allegations of the complaint and draw[] all reasonable inferences in favor of the plaintiff," and determine whether the complaint, thus viewed, "affirmatively and plausibly suggest[s] that the court has subject matter jurisdiction." *Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738 (KAD), 2023 WL 4932034, at *2 (D. Conn. Aug. 2, 2023) (citing *Carter*, 822 F.3d at 56–57).

When a defendant moves to dismiss under Rule 12(b)(6), "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will withstand such a motion so long as its factual allegations "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). This plausibility standard, however, "does not impose a probability requirement at the pleading stage." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quotation and citation omitted). Rather, "the court's task is to assess the legal feasibility of the complaint," and "not to assess the weight of the evidence that might be offered on either side." *Id.*

4

**ARGUMENT**

**I.    Plaintiffs have standing to bring their claim.**

Defendant first argues that Plaintiffs have failed to satisfy two of the three elements of Article III standing: an injury in fact and the defendant's causation of that injury in fact. *See* Dkt. No. 36-1 at 13–18.[1] Defendant is incorrect.

**A.  Plaintiffs have alleged an injury in fact.**

An injury in fact must be "concrete, particularized, and actual or imminent." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)). In contending that Plaintiffs have failed to allege such an injury, Defendant makes two sorts of arguments: first, that the kind of harm Plaintiffs allege is not concrete (Dkt. No. 36-1 at 15–16); and second, that even if that kind of harm were sufficient, Plaintiffs' allegations are just too conclusory to plead that such harm actually occurred to Plaintiffs themselves (*id.* at 14–15).

*1. Concrete injury.*   A concrete injury can be either tangible or intangible. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). An intangible injury creates standing if it has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," including the "disclosure of private information." *Id.*

The kind of injury that Plaintiffs allege here falls within this constitutionally cognizable category of intangible harm, as the Second Circuit recognized in *Bohnak*. There, the court recognized that "exposure of [a plaintiff's] private [personally identifying information] to unauthorized third parties" bears a sufficiently close relationship "to a well-established common-law analog: public disclosure of private facts." *Bohnak*, 79 F.4th at 285; *see also Murray v. Conn.*

---

[1] When citing pages in this document, Plaintiffs use the pagination of the CM/ECF system, *i.e.*, the pagination printed in blue on the header of each page.

*Coll.*, No. 3:24-cv-01099-MPS, 2025 WL 2712664, at \*6–7 (D. Conn. Sept. 23, 2025) (holding, under *Bohnak*, that disclosure of personally identifying information to third parties without authorization was a concrete injury in fact); *Jones v. Strum, Ruger & Co.*, No. 3:22-cv-1233 (KAD), 2024 WL 1307148, at \*3 (D. Conn. Mar. 27, 2024) (in data-breach case, holding that "*TransUnion* and *Bohnak* foreclose Defendants' arguments as to whether Plaintiffs have sufficiently alleged a concrete injury"). That injury is just what Plaintiffs allege here. The private personally identifying information on their warranty cards was transmitted to Defendant in violation of the promises on the warranty cards, and Defendant used it in a way that violated those promises. Dkt. No. 33, ¶¶ 22–58. That Plaintiffs seek to remedy that injury through a claim for unjust enrichment, rather than through some other claim, is irrelevant to whether Plaintiffs suffered an injury in fact under Article III. *See Bohnak*, 79 F.4th at 286 ("We recognize that Bohnak does not in this case assert a common law claim for public disclosure of private facts, and it matters not whether New York common law recognizes a tort relating to publication of private facts.").

Defendant does not mention, let alone distinguish, *Bohnak*. Instead, it argues that Plaintiffs did not suffer an out-of-pocket financial loss. That argument is not responsive to the injury-in-fact suffered here—an injury to Plaintiffs' interest in the privacy of their personally identifying information.

Finally, Defendant states that "neither Plaintiff alleges even seeing an NSSF advertisement or receiving a single mailing," but this point is irrelevant. Dkt. No. 36-1 at 15. Whether Plaintiffs suffered an injury in fact does not depend on whether Defendant used its unauthorized collection of private, personally identifying information to target Plaintiffs individually. What matters for injury-in-fact purposes, rather, is (1) that Plaintiffs' private, personally identifying information was exposed to Defendant in violation of the agreements between Plaintiffs and firearms

6

manufacturers and retailers, and without Plaintiffs' knowledge or authorization, and (2) that the information was then used for purposes that also violated those agreements and went beyond Plaintiffs' knowledge or authorization. *See Bohnak*, 79 F.4th at 285. Whether those purposes included the individual targeting of Plaintiffs is irrelevant.

2. *Sufficiency of the allegations.* Defendant also challenges the factual sufficiency of the allegations themselves, arguing that Plaintiffs' allegations are too conclusory "to adequately allege that [Defendant] ever possessed their warranty card information, much less used it in a manner that caused them harm." Dkt. No. 36-1 at 14. While Defendant tries to frame this challenge as an argument that Plaintiffs have not suffered "actual" or "particularized" injury, *id.*, the substance of its argument is that Plaintiffs have failed to satisfy pleading requirements. Defendant does not appear to deny that Plaintiffs would have suffered actual and particularized injury *if* they had properly pleaded that Defendant received their individual warranty cards and used them as part of its database. Defendant simply denies that Plaintiffs have properly pleaded these facts. That position, however, ignores both the material allegations and the requirement that all reasonable inferences from those allegations must be drawn in Plaintiffs' favor.

Consider first the allegations about Defendants' receipt of warranty cards. Plaintiffs allege that Defendant began receiving warranty cards by 1997 at the latest. *See* Dkt. No. 33, ¶¶ 28–30. They allege, too, that the number of warranty cards in Defendant's database was enormous: By May 2001, Defendant had received over half a million warranty cards, *see id.* ¶ 38, "spann[ing] decades of purchases," *id.* ¶ 37. By February 2002, it had received even more. *See id.* ¶ 39 (noting growth of database). By June 2017, the database also "included . . . the personal information of people who had submitted a warranty card upon purchasing certain firearms brands in the prior

7

twenty years," *id.* ¶ 43, and the database stretched back to purchases "from at least the late 1980s," *id.* ¶ 44.

The Amended Complaint also names the manufacturers and retailers that contributed warranty cards to the database, and links them to Plaintiffs. Among them are Cabela's, Glock, Remington, Savage Arms, Smith & Wesson, and Winchester. *See id.* ¶¶ 39, 43. Plaintiffs purchased firearms manufactured by—or, in the case of Cabela's, sold by—these companies, and they filled out the warranty cards for those purchases.[2] *See id.* ¶¶ 84, 86, 88, 93–95. They made the relevant purchases, moreover, in the latter half of the 1980s, the 1990s, the 2000s, and the first half of the 2010s—i.e., the periods covered by the warranty cards that NSSF received and used for political purposes. *Compare id.* ¶¶ 84, 86, 88, 93–95, *with* ¶¶ 35, 37–39, 43–44.

From these allegations about Defendant's general practices and about Plaintiffs' firearms purchases, it is more than reasonable to infer that Defendant received and used Plaintiffs' warranty cards. It is sufficient that Defendant collected a huge number of warranty cards, including warranty cards from the manufacturers and retailers of Plaintiffs' firearms, and that the warranty cards that Defendant collected covered the periods of Plaintiffs' firearms purchases.

The Second Circuit's *Lynch* decision shows that allegations of a widespread and persistent practice, combined with allegations that factually link the plaintiffs to that practice, are sufficient to allege that the practice personally affected the plaintiffs. There, the plaintiff, after being arrested during a public protest, sued New York City and individual defendants under 42 U.S.C. § 1983. *Lynch*, 952 F.3d at 71. In reversing the dismissal of plaintiff's municipal liability claims, the Second Circuit concluded that the plaintiff had plausibly alleged that from 2004 to 2011, New York police officers had a practice of making false statements in support of the arrests they made

---

[2] In a different section of its argument, Defendant insists that Plaintiffs have not properly alleged that they filled out warranty cards for their purchases. Plaintiffs respond to that argument below.

at public demonstrations. *See id.* at 80–82. Even though the plaintiff was arrested after that period in 2015, the Second Circuit concluded that the complaint plausibly alleged that the practice still existed in 2015 and affected Lynch personally, because the complaint *also* alleged that Lynch's arrest at a 2015 demonstration had been based on false statements. *Id.* at 82.

This is an easier case than *Lynch*, because here, unlike there, the period covered by Defendant's practice and Plaintiffs' individual facts are the same: Defendant's database of warranty cards encompasses the times that Plaintiffs purchased firearms and filled out warranty cards. *Compare* Dkt. No. 33, ¶¶ 84, 86, 88, 93–95, *with id.* ¶¶ 35, 37–39, 43–44. Both Lynch and Plaintiffs here successfully link themselves to a defendant's general practice by alleging facts showing that their actions brought them within the confines of the defendant's practice. Lynch did so by alleging that an NYPD officer made false statements to support his arrest at a demonstration. *Lynch*, 952 F.3d at 82. Plaintiffs do so here by alleging that they filled out warranty cards for firearms made or sold by the same manufacturers or retailers who gave their warranty cards to Defendant. *See* Dkt. No. 33, ¶¶ 39, 43, 84, 86, 88, 93–95.

Finally, to support the idea that Plaintiffs were not personally affected by Defendant's practices, Defendant notes that Plaintiffs do not allege that they saw "an NSSF advertisement" or "receiv[ed]" an NSSF "mailing." Dkt. No. 36-1 at 15. From the Amended Complaint's failure to state whether Plaintiffs received communications from NSSF, Defendant asks this Court to infer that it did not receive Plaintiffs' private, personally identifying information or use the information for unauthorized purposes. That is not a plausible inference for two reasons. First, it is an inference from mere silence; the Amended Complaint does not state that Plaintiffs did *not* receive communications from Defendant. Second, even if Defendant did not target Plaintiffs individually, that hardly shows it did not incorporate Plaintiffs' warranty cards into its database. Defendant may

9

well have deemed it unnecessary to target Plaintiffs, who are longtime owners of many firearms. *See* Dkt. No. 33, ¶ 76 ("For several decades now, political campaigns have been so expensive that politicians cannot afford to reach out to all voters . . . ."). In any event, even if Defendant's inference were plausible, the Court cannot draw that inference at this stage, because "[t]he choice between or among plausible inferences or scenarios" merely raises a question of fact that cannot be resolved on the pleadings. *Lynch*, 952 F.3d at 75 (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012)).

### B. Plaintiffs have alleged that it is Defendant who caused the injury in fact.

Defendant contends that Plaintiffs allege no "connection" between Defendant and their alleged harm. *See* Dkt. No. 36-1 at 16–18. To a great extent, this contention simply repeats the argument that Plaintiffs' allegations are too conclusory to link Defendant's practices to Plaintiffs themselves. Thus, Defendant asserts that the Amended Complaint merely contains "allegations that NSSF, at some point, used someone's warranty card information for get-out-the-vote efforts" and "the conclusory allegation that NSSF received Plaintiffs' personal information, even though Plaintiffs fail to allege that they ever received outreach from NSSF." *Id.* at 17 (citation omitted). The notion that this caricature fairly describes Plaintiffs' allegations, and the position that Plaintiffs' allegations are too conclusory, should be rejected for the reasons already stated.

Defendant also maintains that Plaintiffs' allegations are insufficient to show that they filled out warranty cards for the relevant firearms. *See id.* For Plaintiff Cocanour, Defendant's reading of the complaint is demonstrably incorrect. The Amended Complaint alleges that Cocanour's "practice[,] *whenever he purchases a new firearm*[,] is to return the fully filled out-warranty card for that firearm or (for more recent purchases) to submit the same information online." Dkt. No. 33, ¶ 90 (emphasis added). If that is Cocanour's practice whenever—*i.e.*, every time—he buys a new firearm, and if "[e]ach" of the relevant firearms he purchased "was accompanied by a warranty

10

card," *id.* ¶ 89, then as a matter of mere logic, Cocanour *must* have filled out the warranty cards for each of the relevant firearms.

For Plaintiff Rimkus, it is enough that the Amended Complaint alleges that his "normal practice was to fully fill out a warranty card and mail it in within two or three weeks after purchasing a firearm." *Id.* ¶ 97. This factual allegation about Rimkus's normal practice must be accepted as true. *Lynch*, 952 F.3d at 74–75. Even Defendant does not ask the Court to disbelieve it. *See Anderson News*, 680 F.3d at 185 (noting that a dismissal on the pleadings cannot be based on "disbelief of a complaint's factual allegations" (citation and quotation omitted)). From this allegation, it is reasonable to infer that after at least one of the more than half a dozen relevant purchases detailed in the Amended Complaint, Rimkus acted in accordance with his normal practice and filled out the warranty card. By definition, that inference is more reasonable than the inference that Defendant asks the Court to make: that Rimkus, after every relevant purchase, *defied* his normal practice and failed to fill out the warranty card. For if Rimkus defied his normal practice so often, the practice of filling out warranty cards could not be his "normal" one. But the allegation that it *was* his normal practice must be accepted as true.

Defendant also claims a lack of causation because it merely received—and did not transmit—Plaintiffs' private, personally identifiable information. *See* Dkt. No. 36-1 at 18. Defendant did, however, share the information with Cambridge Analytica. *See* Dkt. No. 33, ¶¶ 46–47. Far more importantly, the injury in fact here *was* Defendant's knowing receipt and use of Plaintiffs' private, personally identifiable information, in violation of Plaintiffs' agreements with gun manufacturers and retailers and without their knowledge or consent. In receiving and using that information, Defendant was responsible for Plaintiffs' injury in fact. *See supra* Section I.A.1 (discussing *Bohnak*). The causal connection is clear.

11

In a variation on its earlier argument, Defendant argues that it was not responsible for Plaintiffs suffering an out-of-pocket financial loss. *See* Dkt. No. 36-1 at 17–18. Once again, that argument is not responsive, because Plaintiffs' injury in fact was an injury to their interest in the privacy of their personally identifying information. That is the constitutionally relevant injury for which Defendant is responsible.

\*       \*       \*

When not misunderstanding the nature of Plaintiffs' injury in fact, much of Defendant's argument amounts to a demand that Plaintiffs provide direct proof that their individual warranty cards are included in Defendant's own database. Plaintiffs cannot have access to that kind of direct proof before discovery, and at this stage no such proof is required. *See Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) ("[B]efore discovery, it is unclear what other facts Barnes could be expected to allege . . . ."). For this reason and the others given above, Plaintiffs have sufficiently alleged Article III standing, and Defendant's Rule 12(b)(1) motion should be denied.

## II.    Plaintiffs have plausibly alleged their claim for unjust enrichment.

To bring a claim for unjust enrichment under Connecticut law, a plaintiff must allege that: (1) the defendant was benefited; (2) the defendant unjustly did not pay the plaintiff for that benefit; and (3) the failure of payment was to the plaintiff's detriment. *E.g.*, *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 522 (Conn. 1994) (quoting *Polverari v. Peatt*, 614 A.2d 484, 489–90 (Conn. 1992)); *Murray*, 2025 WL 2712664, at \*9 (quoting *Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 609 (Conn. 2009)). It is typically a question of fact whether these elements have been satisfied. *See, e.g.*, *New Hartford*, 970 A.2d at 610. Here, the amended complaint is more than sufficient to plausibly allege all three elements.

12

## A. Defendant received a cognizable benefit.

Plaintiffs sufficiently allege that the private, personally identifying information on their warranty cards conferred two separate kinds of cognizable benefit on Defendant.

*1. Use of private, personally identifying information for advertising.* Plaintiffs allege that their information enabled Defendant to target more voters, and target them with more precision, efficiency, and effectiveness, than it would otherwise have been able to do. Dkt. No. 33, ¶ 36 (data used "to target more than 2.5 million people by mail"); *id.* ¶ 40 ("The NSSF database was used to target voters in the 2002 midterm election."); *id.* ¶¶ 54–57 (data was used to target voters and craft ads to fit the personalities inferred from the data); *id.* ¶ 58 (digital ads created using the data were sent to "hundreds of thousands of targeted voters, driving millions of views and millions of visitors to NSSF's website"); *id.* ¶¶ 74–76 (allegations about how political organizations and actors can use personal data to their benefit).

Contrary to Defendant's arguments, this benefit is cognizable under Connecticut law even if it is "not financial in nature" or fails to allege "measurable financial gain." Dkt. No. 36-1 at 19, 20. In *Hartford Whalers*, for example, an unjust enrichment claim was predicated on unpaid-for advertising. When the defendants contended that plaintiffs had failed to prove a benefit because they had failed to show that the advertising generated "additional revenues or profits" for the defendants, the Connecticut Supreme Court rejected that contention, holding that proof of a specific and measurable financial benefit was not required. *Hartford Whalers*, 649 A.2d at 522–23. It is irrelevant that the benefit in *Hartford Whalers* was commercial advertising whereas here the benefit was noncommercial advertising. *Contra* Dkt. No. 36-1 at 19–20.

Defendant cites no Connecticut case suggesting that a benefit must be narrowly pecuniary, and such a holding would be contrary to the "broad and flexible" nature of unjust enrichment in Connecticut. *Hartford Whalers*, 649 A.2d at 521 (quotation and citation omitted). It would also be

13

contrary to the historical understanding of a benefit, which simply "denotes any form of advantage," and is not limited to "pecuniary advantage." *Restatement (First) of Restitution* § 1 cmt. b (1937). Defendant's narrow understanding of "benefit" would also largely immunize nonprofit organizations from claims for unjust enrichment, a result for which Defendant cites no supporting authority from Connecticut or elsewhere.

The cases that Defendant cites, mostly from outside Connecticut, do not show otherwise. Two of the Connecticut cases it cites, *see* Dkt. No. 36-1 at 19, did not concern a nonpecuniary benefit, and neither of them holds that a benefit must be pecuniary; at most, they suggest that a financial benefit is sufficient but not necessary. The cases it cites from Massachusetts, New Jersey, New York, Illinois, and Ohio, Dkt. No. 36-1 at 19–20 & nn.7–8, similarly do not hold that a nonpecuniary benefit like noncommercial targeted advertising cannot, as a matter of law, qualify as a benefit.[3] And in *Bell v. Survey Sampling International, LLC*, the plaintiff alleged that a telemarketing company made unwanted automated telemarketing calls, but merely included a conclusory statement that the company had "obtained substantial benefit"; the plaintiff did not allege "even that she participated in [the defendant's] survey questionnaire." No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *8 (D. Conn. Mar. 15, 2017). That is a far cry from the Amended Complaint's detailed allegations about the targeted advertising that Plaintiffs' and others class members' private, personally identifying information made possible.

---

[3] Note, too, that one of the cases, *Ward v. Schaefer*, No. 16-12543-FDS, 2021 WL 1178291 (D. Mass. Mar. 29, 2021), occurred at a different procedural stage—it was a summary-judgment ruling. In *Ward*, the plaintiff argued that his participation in a medical study benefitted the defendant doctor who conducted the study. *See id.* at *25. The plaintiff offered a range of speculative theories, including "professional recognition" from an article about the study, a clinical research agreement that result in laboratory funding, and a salary raise based in part on the defendant's research activities. The court reviewed the extensive factual record and found that no theory could support a finding of a benefit. *Id.* at *25–27. Here, in sharp contrast, Plaintiffs' allegations make out two simple and nonspeculative theories of benefit: (1) the nonpecuniary benefits of targeted advertising; and (2) the measurable financial value of Plaintiffs' private, personally identifying information. Dkt. No. 33, ¶¶ 59–81.

14

*2. Value of the information itself.* Quite apart from the nonpecuniary benefit that Defendant received from using the personally identifying information to disseminate targeted advertising, Plaintiffs also allege that personally identifying information *does* have quantifiable monetary value itself. The Amended Complaint contains extensive allegations about "the market for, and quantifiable value of, private personal information," demonstrating that personally identifying information has measurable monetary value to all kinds of individuals and entities— including, notably, "political actors seeking to engage and motivate voters." *See* Dkt. No. 33, ¶¶ 66–81.

Accordingly, courts have recognized that private, personally identifying information has measurable financial value and can be the subject of an unjust-enrichment claim. *See, e.g.*, *Lionetta v. InMarket Media, LLC*, 798 F. Supp. 3d 139, 152–53 (D. Mass. 2025) (on motion to dismiss, holding plaintiffs plausibly alleged unjust-enrichment claim for disgorgement of profits from the sale of plaintiffs' location data); *In re Facebook, Inc., Internet Tracking Litig.* ("*In re Facebook Tracking*"), 956 F.3d 589, 600 (9th Cir. 2020) (on motion to dismiss, holding that plaintiffs sufficiently alleged "entitlement to Facebook's profits from users' personal data" where plaintiffs alleged that "their browsing histories carry financial value"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (on motion to dismiss, holding that "[e]ven if the plaintiffs suffered no economic loss from the disclosure of their information, they may proceed at this stage on a claim for unjust enrichment to recover the gains that Facebook realized from its allegedly improper conduct"); *CTC Real Est. Servs v. Lepe*, 44 Cal. Rptr. 3d 823, 825 (Cal. Ct. App. 2006) (holding that "[a] person's identifying information is a valuable asset").

To support the notion that private, personally identifying information lacks monetary value and hence cannot constitute a benefit, Defendant cites three data-breach cases (none of the other

15

cases it cites address whether such information has monetary value). *See* Dkt. No. 36-1 at 19 n.7, 20 & n.8. In two of those cases, however, the courts dismissed unjust enrichment claims because the plaintiffs—unlike Plaintiffs here—had not sufficiently alleged *why* the private, personally identifying information had value to the defendant. *See Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 782 (S.D. Ohio 2024) ("Beyond the threadbare allegation, Plaintiffs do not explain how Limestone benefited from Plaintiffs' PII."); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at \*18 (D.N.J. Dec. 16, 2021) (distinguishing cases that had recognized that personal information can be valuable because "[h]ere, . . . there is no such allegation that Defendants . . . receive any additional value from Plaintiffs['] Personal Information"). And while Defendant's third case contains dictum "reject[ing] the proposition that an individual's personal identifying information has an independent monetary value," *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (citation omitted), there the defendant "experienced a cybersecurity attack," *id.* at 580, and thus, the court suggested, the "third-party hackers, not Defendants, [were] the ones who benefitted from the Data Breach," *id.* at 592. The *Gallagher* court thus necessarily recognized that in certain circumstances, a party who gains unauthorized access to private, personally identifying information *can* derive a cognizable benefit. This is one of those circumstances, for all the reasons the Amended Complaint alleges. *See* Dkt. No. 33, ¶¶ 71–81.

Defendant also contends that the Amended Complaint must allege that if Defendant had not received Plaintiffs' private, personally identifying information for free, it "otherwise would have bought that information, would have bought it from Plaintiffs, or avoided any specific purchase." Dkt. No. 36-1 at 20. This argument does not make sense. When a defendant unjustly receives and retains a valuable asset without paying for it, the free value and use of that asset do

in fact benefit the defendant, even if the defendant would not have chosen to pay for the benefit in a counterfactual world. Unsurprisingly, therefore, Defendant cites no authority holding that a plaintiff asserting a claim for unjust enrichment must allege that Defendant would have taken or avoided a particular action if it had *not* received a valuable asset for free.

Indeed, Connecticut authority shows that unjust enrichment requires no allegations about what Defendant would have done in a counterfactual world. In *Schirmer v. Souza*, 12 A.3d 1048 (Conn. App. Ct. 2011), the plaintiffs financed a house expansion while believing that their daughter, rather than the defendants, owned the house. The daughter and her then-husband, not the defendants, asked the plaintiffs to finance the project. *See id.* at 1051. When the defendants later sold the enlarged house, they did not share any proceeds with plaintiffs. The Connecticut Appellate Court held that the defendants were liable for unjust enrichment even though they "neither knew of nor accepted the plaintiffs' contributions" to the house renovation, and "did not choose to have their property renovated" in the first place. *Id.* at 1056. Thus, in *Schirmer*, there was no evidence that the defendants would have asked for and accepted plaintiffs' financing of the renovation in the counterfactual world in which the plaintiffs had known that defendants owned the property. What the defendants would have done in a counterfactual world, however, was irrelevant. The dispositive point was that the defendants, in the actual world, had in fact received a benefit from the plaintiffs without paying for it. *See id.*; *see also Gilpatric v. Hartford*, 120 A. 317, 320 (Conn. 1923) (money paid by mistake was subject to restitution). The same rule is dispositive here: Defendants, in the actual world, received an actual benefit without paying for it. *See also infra* Section II.C.2.

17

**B. Defendant received the benefit from Plaintiffs, even if it passed through the hands of third parties.**

Defendant next argues that Plaintiffs "fail to allege that [Defendant] 'unjustly' failed to pay them for their warranty card information" because Plaintiffs' private, personally identifying information was transmitted by firearms manufacturers and retailers, rather than directly from Plaintiffs themselves. Dkt. No. 36-1 at 21–22. Defendant argues that as long as it "honored whatever arrangement it had" with the manufacturers and retailers, its receipt and use of Plaintiffs' private, personally identifying information was not unjust. *Id.* at 22.

Defendant's argument is premised on multiple misapprehensions of Connecticut law on unjust enrichment. For one thing, there is no requirement that a plaintiff confer the benefit directly. Quite the opposite: "Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit." *Geriatrics, Inc. v. McGee*, 208 A.3d 1197, 1211 (Conn. 2019) (quoting *New Hartford*, 970 A.2d at 618); *see also Orlando v. Liburd*, _ A.3d _, 353 Conn. 845, 875 (2026) (recognizing that "a claim for unjust enrichment may arise from an indirect benefit conveyed by a third party to the defendant"). Nor is there any requirement that a defendant have breached a contract with an intermediate party. *Cf. Franks v. Lockwood*, 150 A.2d 215, 218 (Conn. 1959) ("[I]t is not necessary . . . that the party unjustly enriched should have been guilty of any tortious or fraudulent act."). Such a requirement would be strange indeed, since it would allow two parties in cahoots with each other to avoid liability for unjust enrichment precisely *because* they were in cahoots with each other. Connecticut courts would not permit that result. *See New Hartford*, 970 A.2d at 613 ("In matters of equity, the court is one of conscience which should be ever diligent to grant relief against

18

inequitable conduct, however ingenious or unique the form may be." (quotation and citation omitted)).

Rather, where there is an indirect benefit, the plaintiff must merely show "that it has 'a better legal or equitable right' to the disputed benefit than the defendant." *Geriatrics*, 208 A.3d at 1211 (quoting *Restatement (Third) Restitution and Unjust Enrichment* § 48 at 144 (2011)). And Plaintiffs have alleged that Defendant knowingly received and used Plaintiffs' private information without paying for it. Dkt. No. 33, ¶¶ 22–58. Plaintiffs have a superior right to control who receives their private information, and the value of that information, because they provided their information to manufacturers and retailers under an express agreement that the information would at most be used for limited purposes by a limited number of persons and *not* be disclosed to Defendant or used for political purposes. *Id.* ¶¶ 59–81.

The only authority Defendant cites for this part of its argument, *Bell*, is inapposite. *Bell* did not so much as hint that a claim for unjust enrichment must fail if the benefit is conferred indirectly, or if the defendant has not breached a contract with an intermediate party. *Bell* did not involve an indirectly conferred benefit at all. *See* 2017 WL 1013294, at *8.

### C. Defendant's lack of payment was to Plaintiffs' detriment.

Contrary to Defendant's assertion, *see* Dkt. No. 36-1 at 22–25, Plaintiffs have sufficiently alleged that "the failure of payment was to the plaintiffs' detriment." *Hartford Whalers*, 649 A.2d at 522 (citation omitted). Their allegations are sufficient for two independent reasons.

*1. Loss of a contractual right.* Plaintiffs allege that because Defendant received, retained, and used their private, personally identifying information, they suffered a detriment because they lost a right conferred on them by contract. They allege that, "firearms purchasers entered into an agreement with retailers or manufacturers" under which they conveyed their private, personally identifying information to those retailers or manufacturers under certain conditions. Dkt. No. 33,

19

¶ 60. In some instances, that condition was that the information would be disclosed to no one else. *See id.* ¶¶ 61, 63. In other cases, the retailers or manufacturers promised (1) that the information would be disclosed only to a limited and specified group of persons—a group of which Defendant was not a member; and (2) that the information would be used only for limited and specified purposes, none of which was political. *See id.* ¶¶ 61–64. Plaintiffs lost these contractual rights when—without any payment to Plaintiffs—Defendant received, retained, and used their information for political purposes.

This loss is legally sufficient under Connecticut law, which holds that the uncompensated loss of a legally enforceable right, even without other pecuniary harm, constitutes a detriment. In *Monarch Accounting Supplies, Inc. v. Prezioso*, for example, the defendant landlord leased premises to the plaintiff. 368 A.2d 6 (Conn. 1976). The defendant then agreed that an advertising company could erect a large sign on the roof of the premises in exchange for payment for use of the roof. After holes were bored in the roof and "much of the supporting structure was in place," the plaintiff sued both the landlord and the advertising company, *id.* at 8, but then stipulated with the advertising company that it could finish installing the sign on the roof "upon the completion of" certain "structural changes" to the sign and roof, *id.* The plaintiff's claim for unjust enrichment proceeded to trial, after which the court ruled in favor of the plaintiff. The Connecticut Supreme Court affirmed, reasoning that the plaintiff had suffered a detriment because it had lost its "possessory interest in the roof" under the lease, even though there was no "material physical damage to the premises." *Id.* at 666. Nor was there any finding that the plaintiff would have decided to sublease the roof on its own and would have made money thereby. *See id.* at 8–9, 10. What mattered, rather, was that the landlord, "by his actions, removed the plaintiff's ability to negotiate with the defendant for the use of the roof." *Id.* at 10. Here, similarly, Defendant's receipt, retention,

20

and use of Plaintiffs' private, personally identifying information removed Plaintiffs' legally enforceable right to negotiate with the firearms manufacturers and retailers (and with Defendant for that matter) for Defendants' use of their information, a use that was prohibited under Plaintiffs' agreements with the firearms manufacturers and retailers.

That a detriment need not be pecuniary is also shown by *Cadle Co. v. Gabel*, 794 A.2d 1029 (Conn. App. Ct. 2002). There, the defendant argued that a constructive trust, a remedy for unjust enrichment, could not be imposed because the plaintiff, an unsecured creditor, "could not have been harmed" by the fraudulent transfer of real property that could never be used to satisfy plaintiff's debt—in other words, that the plaintiff suffered no financial detriment from the transfer. 794 A.2d at 1037. In affirming the constructive trust, the court explained that a lack of financial detriment to plaintiff was irrelevant to the claim:

> There are some situations, however, in which a constructive trust is imposed in favor of a plaintiff *who has not suffered a loss* or who has not suffered a loss as great as the benefit received by the defendant. In these situations the defendant is compelled to surrender the benefit on the ground that he would be unjustly enriched if he were permitted to retain it, *even though that enrichment is not at the expense or wholly at the expense of the plaintiff.*

*Id.* (emphasis added) (quoting *Restatement (First) of Restitution* § 160 cmt. d). The court went on to further quote the Restatement on the same point: "[I]n [some] situations, a benefit has been received by the defendant but the plaintiff *has not suffered a corresponding loss or, in some cases, any loss*, but nevertheless the enrichment of the defendant would be unjust[.]" *Id.* at 1037–38 (first and third alteration added) (emphasis added) (quoting *Restatement (First) of Restitution* § 1 cmt. e). Similarly, here, a lack of narrowly financial detriment is not fatal to Plaintiffs' claim. It is enough that their private personal information was received and used without their knowledge or consent and in violation of their agreements with firearms manufacturers and retailers.

Defendants' Connecticut authorities are not to the contrary. The relevant portion of *Michel v. Yale University*, decided on summary judgment, was about whether the plaintiff had adduced admissible evidence to support his "requested remedy for Yale's alleged unjust enrichment": damages "equal to the difference in value between the in-person education promised and the online education provided." No. 3:20-CV-01080 (JCH), 2023 WL 1350220, at *6 (D. Conn. Jan. 30, 2023) (citation to record omitted). The court carefully examined the factual record before concluding that the plaintiff had provided no evidence or admissible methodology by which to calculate those damages. *Id.* at *6–7. *Michel* does not suggest that a detriment, to be legally cognizable, must involve out-of-pocket loss or other purely pecuniary injury. And at this stage, Plaintiffs have no obligation to submit a method for making "a fair and reasonable estimate" of the benefit that Defendant received, which is the normal measure of damages. *Hartford Whalers*, 649 A.2d at 523; *see also id.* ("Where damages are appropriate but difficult to prove the law eschews the necessity of mathematical exactitude."). Plaintiffs have located no court in this district, including the court in *Michel*, that has imposed such a requirement at the pleading stage. *See Murray*, 2025 WL 2712664, at *9; *Jones*, 2024 WL 1307148, at *9; *Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 192 (D. Conn. 2021).

Nor are Defendants helped by *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, 566 F. Supp. 2d 81 (D. Conn. 2008), *aff'd*, 567 F.3d 79 (2d Cir. 2009), which was decided after a bench trial. Like *Michel*, that decision does not suggest that Connecticut law requires a detriment to be pecuniary. It simply states that, on the record before it, one of the plaintiffs "has not *proved* any monetary damages," and that another plaintiff's damages were "duplicat[ive]" of those for its constitutional claim. *Id.* at 103 (emphasis added). To the extent *Bridgeport & Port Jefferson Steamboat* could be read to suggest that a remedy for unjust

22

enrichment must measure the amount of the plaintiff's loss rather than the amount of the defendant's benefit, that reading would contravene binding Connecticut precedent, *Hartford Whalers*, 649 A.2d at 523, and was not at issue when the defendant appealed and the Second Circuit affirmed the district court.

   *2. Detriment with pecuniary value.* Even if Plaintiffs were required to allege a detriment with pecuniary value, however, they have successfully done so.

   Plaintiffs did not receive the benefit of their bargain with the firearms manufacturers and retailers. They allege that "in filling out the warranty cards here, firearms purchasers entered into an agreement with retailers or manufacturers in which they would receive certain benefits in exchange for giving the retailer or manufacturer certain information." Dkt. No. 33, ¶ 60. But none of the warranty cards at issue "disclosed to product purchasers that their information would be given to [Defendant] or used for political purposes." *Id.* ¶ 61; *see also id.* ¶¶ 62–65. Therefore, Plaintiffs received something less than what they bargained for: in some cases, the absolute confidentiality of their private information, and in others, the use of that information by certain limited persons for certain limited purposes. And whenever consumers receive less than they bargain for, they have "suffered a loss of money or property." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1304 (S.D. Cal. 2020) (quoting *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981)) (interpreting "ascertainable loss of money or property" under the Connecticut Unfair Trade Practices Act); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024) ("If a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have.").

23

To put the point differently, Plaintiffs, under their agreements with firearms manufacturers and retailers, had a right to exclude Defendant from receiving and using their private, personally identifying information. *See Meta Pixel*, 724 F. Supp. 3d at 1024. If Defendant wanted to lawfully receive that information from the firearms manufacturers and retailers, it would have had to induce Plaintiffs and other firearms purchasers to modify their agreements. Their failure to do so—their unilateral receipt and use of that information without paying Plaintiffs first—was to Plaintiffs' monetary detriment because, as the Amended Complaint alleges in detail, the private, personally identifying information of voters has measurable monetary value to political actors like Defendant. Dkt. No. 33, ¶¶ 66–81. The "failure of payment was to the plaintiffs' detriment." *Hartford Whalers*, 649 A.2d at 522 (citation omitted).

For this failure of payment to constitute monetary detriment, it is not necessary for Plaintiffs to plead what Defendant would have done if it had *not* received Plaintiffs' private, personally identifying information for free—to plead, for example, that Defendant would in fact have paid Plaintiffs and others for their information in a counterfactual universe. No Connecticut decision, as far as Plaintiffs are aware, has required such a showing, and Defendant cites none.

Connecticut authority, in fact, is to the contrary. In *Schirmer*, the Connecticut Appellate Court found it irrelevant that the defendants would not have agreed to the financing of a renovation, and thus that the plaintiffs would not have financed it, in a counterfactual world in which plaintiffs had known that defendants, rather than plaintiffs' daughter, owned the house. *Schirmer*, 12 A.3d at 1056. Likewise, in *Franks*, where the defendant was responsible for stripping topsoil from the plaintiff's property without paying for it, the Connecticut Supreme Court did not require the plaintiff to prove that defendant would have bought topsoil from the plaintiff, rather than from someone else, if it had not stripped the topsoil away for free. The plaintiff had suffered a detriment

24

simply because the topsoil had value to the defendant, and the defendant did not pay for it. *See Franks*, 150 A.2d at 277–78. Under Connecticut law, in short, the dispositive question is whether Plaintiffs suffered a detriment because of Defendant's *actual* failure to pay for their valuable information, rather than whether Defendant *would* have paid for that information in a counterfactual world.

Defendant's cited authorities are inapposite. *See* Dkt. No. 36-1 at 23–24. None of the cases included allegations that the plaintiff, like Plaintiffs here, lost the ability to exercise a contractual right to insist upon payment for assets that are properly alleged to have monetary value. In some of those cases, plaintiffs did not even bring a claim for unjust enrichment, or the court did not address the claim. *See Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1229 (D. Nev. 2020) (no claim for unjust enrichment); *Welborn v. Internal Rev. Serv.*, 218 F. Supp. 3d 64, 69 (D.D.C. 2016) (no claim for unjust enrichment); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001) (declining supplemental jurisdiction over state-law claims including unjust enrichment). In *Brown v. State Farm Mutual Automobile Insurance Co.*, plaintiffs sued State Farm for disclosing private health information to an association of insurance companies, and sued the association for "collecting, harvesting, and disclosing" that information to their subscribers. 2025 WL 81340, at *2 (N.D. Ill. Jan. 13, 2025). The plaintiffs did not allege that State Farm or the association interfered with their ability to exercise a valid contractual right with another party. *See id.* at *8–9. Similarly, in *In re Jetblue Airways Privacy Litigation*, the plaintiffs alleged that JetBlue disclosed their personal information to a data mining company. 379 F. Supp. 2d 299, 303 (E.D.N.Y. 2005). While the plaintiffs argued that JetBlue had breached its own contract with plaintiffs, *see id.* at 324–27, they did not allege that JetBlue interfered with their ability to exercise a valid contractual right with another party, *see id.* at 329–30.

25

For all these reasons, Plaintiffs have plausibly alleged their claim for unjust enrichment, and Defendant's Rule 12(b)(6) motion should be denied.

### III.    Plaintiffs' claim is not barred by laches.

Finally, Defendant argues that Plaintiffs' claim is barred by laches. *See* Dkt. No. 36-1 at 25–27. To prevail on this "affirmative defense," defendants "must establish, first, that there was an inexcusable delay and, second, that the delay prejudiced the defendant[s]." *Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 991 (Conn. 2019) (citation and quotation omitted).

Laches raises a question "of fact for the trier . . . , unless the subordinate facts found make such a conclusion inevitable as a matter of law." *Id.* (citation omitted). Therefore, "a determination that a claim is barred by laches requires a <u>factual</u> inquiry into the reasons for plaintiff's delay and the extent and nature of the prejudice suffered by defendant as a result of that delay." *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 573 F. Supp. 3d 671, 682–83 (D. Conn. 2021) (underscore in original) (quoting *Deere & Co. v. MTD Prods., Inc.*, No. 00-CIV-5936, 2001 WL 435613, at *2 (S.D.N.Y. Apr. 30, 2001)). "Because such a factual inquiry 'is inappropriate on a motion to dismiss,' a court's inquiry at this stage is limited to 'the face of [the] complaint.'" *Id.* at 683 (quoting *Deere*, 2001 WL 435612, at *2). "Dismissal at this stage on the basis of laches is therefore rare, as the defense 'necessarily involve[s] a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute.'" *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, No. 04-CV-4631, 2006 WL 6176152, at *7 (E.D.N.Y. Mar. 16, 2006)). Under this highly demanding standard, this action may not be dismissed on laches grounds at this stage.

While Defendant concedes that there is no statute of limitations for an unjust enrichment claim under Connecticut law, it still asks the Court to apply the three-year limitations period for torts. Dkt. No. 36-1 at 26. This period is "simply one non-dispositive factor among many relevant

26

to [a court's] ultimate decision" on laches. *Conn. Gen. Life Ins. Co. v. Bio Health Lab'ys, Inc.*, 988 F.3d 127, 135 (2d Cir. 2021). Crucially, that weighing of factors is a factual inquiry that requires factual findings on a full evidentiary record, *see Reclaimant*, 211 A.3d at 991, and thus is not an inquiry appropriate at this stage.

Defendant argues that "[t]here is no excuse" for Plaintiffs bringing a claim now based on conduct that occurred at least more than eight years ago. *See* Dkt. No. 36-1 at 26. But the reason for the apparent delay is simple and alleged in the Amended Complaint: "At all times, [Defendant] has concealed that it received the personal information of firearms and ammunition purchasers and that it used it for political purposes." Dkt. No. 33, ¶ 65. So, too, did manufacturers and retailers conceal that they transferred the information to Defendant, knowing how it would be used. *See id.* In other words, until recently, Plaintiffs had no way to know of Defendant's misconduct, but as soon as Plaintiffs became aware of it, they acted promptly and diligently to take action and assert their claim. There was no inexcusable delay; the delay was, to the contrary, unavoidable. On this basis alone, Defendant's motion should be denied.

Defendant's cries of prejudice also fall flat. *See* Dkt. No. 36-1 at 27. Defendant primarily complains that the departure of relevant employees will "mak[e] relevant documents and data significantly harder to find" and force it to "defend against this publicly-filed claim without the benefit of ready access to the witnesses and evidence." *Id.* But "[a]t this stage and absent 'a fact-intensive analysis and balancing of equities,' . . . it is impossible for the court to determine whether the difficulty in retrieving [these witnesses and materials] will be actual prejudice." *BioHealth*, 573 F. Supp. 3d at 683. Defendant also points out the passage of time, but the "[m]ere lapse of time, without a showing of prejudice, will not sustain a defense of laches." *Id.* (quoting *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019)).

27

Defendant's authorities—both decided on extensive factual records, not at the pleadings stage—are inapposite. In *Litchfield Property Management, Inc. v. Robert Holliday Reid*, decided after a trial, the plaintiff had engaged in prior litigation with the defendant's father. No. CV166013974S, 2021 WL 4125920, at *5 (Conn. Super. Ct. Aug. 18, 2021). "Many of the services provided by the plaintiff to the defendants in this action were closely related to issues involved in the prior litigation," and "[t]he plaintiff could have easily raised and addressed the issue at that time"—a history of awareness and interaction not present here. *Id.* Further, there was "no evidence that the plaintiff had been precluded or obstructed in any way from timely bringing the claims," in sharp contrast to the concealment alleged here. *Id.* And in *Ardaji v. Columbia Pictures Industries, Inc.*, decided on summary judgment, the court found that the only reason for plaintiff's delay appeared to be that the plaintiff did not review a contract after signing it, leaving the court with "no doubt" that the delay was inexcusable. No. CV196040356S, 2020 WL 8024813, at *7 (Conn. Super. Ct. Nov. 20, 2020). Here, Plaintiffs have alleged that Defendant concealed the relevant misconduct.

Ultimately, Defendant cannot satisfy the standard it set out for itself: "Courts will dismiss actions on laches grounds where 'the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar.'" Dkt. No. 36-1 at 25 n.10 (quoting *Solow Bldg Co., LLC v. Nine W. Grp., Inc.*, No. 00 Civ. 7685(DC), 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001)). Because laches here is far from "clear on the face of the complaint," and because laches requires a factual inquiry inappropriate on a motion to dismiss, Defendant's motion should be denied.

## **CONCLUSION**

For the reasons above, the Court should deny Defendant's Motion to Dismiss.

Dated:   January 15, 2026

                                         By /s/ *Benjamin Gould*                           
                                              Riley Breakell (ct31733)
                                              MOTLEY RICE LLC
                                              20 Church Street, 17th Floor
                                              Hartford, CT 06103-1200
                                              Telephone: (860) 218-2727
                                              Fascimile: (860) 882-1682
                                              rbreakell@motleyrice.com

                                              Benjamin Gould (*pro hac vice*)
                                              Nicandro Iannacci (*pro hac vice*)
                                              KELLER ROHRBACK L.L.P.
                                              1201 Third Avenue, Suite 3400
                                              Seattle, WA 98101-3268
                                              Telephone: (206) 623-1900
                                              bgould@kellerrohrback.com
                                              niannacci@kellerrohrback.com

                                              ***Attorneys for Plaintiffs***

29

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2026 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Benjamin Gould*